## P. & C. JACOBS *v.* B. A. ALLARD.

### [IN CHANCERY.]

### *Riparian Rights.*

The orator's starch-mill was a little below on the same stream with the defendant's saw-mill, and the former complained that he was disturbed in the use of his starch-mill by the sawdust and waste from the defendant's mill. The defendant's right to use his mill was unque-tioned, and the orator stood only on the common right of a riparian owner not to be injured in the enjoyment of his water privilege by other riparian owners on the same stream. *Held,* that the defendant in the use of his mill in a reasonable manner had a right to discharge the sawdust, shavings and waste from it into the stream in the ordinary course of using such mills, and that he was not bound, as matter of law, to prevent them from going into the stream, and have them accumulate or draw them off and deposit them so that they could not get into the stream. On the other hand he had not a right, wantonly and needlessly, and out of the ordinary course in such cases, and not in the service of his substantial interest and benefit in the use of his mill in a reasonable manner, to throw or permit them to go into the stream, when by so doing injury would be caused to the orator in the use of his starch factory.

BILL IN CHANCERY. The case arose in Caledonia county and was heard upon bill, answer and testimony, by STEELE, Chancellor, but it did not appear, from any papers furnished, what the decree was except as indicated at the close of the opinion of the court, in which is a sufficient statement of facts and claims of the parties.

*A. J. Willard,* for the orators.

*Timothy P. Redfield,* for the defendant.

Argued at the general term, November, 1868. Decided at the general term, November, 1869.

The opinion of the court was delivered by

BARRETT, J. The orators own and occupy a starch factory on a stream in Newark, deriving title to the water-power and the site of the dry-house from the defendant's grantor, David Smith to Oliver H. Smith, by deed dated May 21, 1862, in which is the following language: " Also the water-power, commencing at a

spotted birch tree, and on the westerly line near the stream, etc., meaning to convey the land upon which the dry-house to the starch-factory stands, and the water-power as above described, for use, except for grist-mill and saw-mill." The defendant derives title from the same grantor to the mill privilege and saw-mill, situated a little above said starch factory, and said *exception* inures to him. The defendant owned and still owns said saw-mill and privilege, and he and his grantors have owned and used them for many years for saw-mill purposes. In 1866, and since the plaintiff's starch factory was erected and put to use, the defendant has put a shingle-machine into his saw-mill and has used it ever since. The complaint is that the defendant, " with the intent and design to injure the orators and damage and hinder them from the use of the water for the purposes of their starch-factory," threw into the stream the sawdust and shavings and waste from the shingle-mill, and placed them on the bank so that they fell in, and that they render the water impure and unfit for making starch, and clog the flume and penstock and prevent the use of the starch-factory, etc. The defendant's right to use his saw and shingle-mill is not questioned. The true idea of the law involved in and governing the subject of this cause is well stated and developed in *Snow* v. *Parsons*, 28 Vt., 459, and no useful purpose would seem to be served in collating the various and extensive learning of the books as bearing on the subject, beyond what is comprehensively embodied in its practical results by REDFIELD, C. J., in that case.

In applying the law as set forth in that case to this, it seems plain that the defendant, in the use of his shingle-mill in a reasonable manner, has the right to discharge the sawdust, shavings and waste from it into the stream in the ordinary course of using such mills, and that he is not bound, as matter of law, to prevent them from going into the stream, and have them accumulate or draw them off and deposit them so that they cannot get into the stream. On the other hand he has not a right, wantonly and needlessly, and out of the ordinary course in such cases, and not in the service of his substantial interest and benefit in the use of his mill in a reasonable manner, to throw or permit them to go into the stream, when, by so doing, injury will be caused to the orators in

the use of their starch factory. Except by the statement that the defendant, with the intent and design to injure the orators, etc., the bill does not show or claim that the defendant has conducted wantonly, or out of the ordinary course in the case of such shingle-mills and their use, or that he has needlessly let the refuse from said mill go into the stream. The orators put themselves by their bill on the common right of riparian owners, not to be injured in the enjoyment of their water rights by other riparian owners on the same stream. They do not show or claim any right by use or prescription as against the defendant that would enable them to exclude him from using his shingle-mill in a reasonable manner, having reference to their equal rights to enjoy the use of the water of the stream in a reasonable manner for the proper purposes of their starch-factory.

The question then is, whether the evidence shows that the defendant, in the use of his shingle-mill, has transcended his right in violation of the concurrent right of the orators. This we must find in order to warrant us in granting relief under the averments and prayer of the bill.

In the first place the evidence makes a rather strong impression on our minds that much of the trouble which the orators claim, and give evidence to show, that they experience in the condition of the water as it comes to their works, is attributable to the manner in which they have constructed and adjusted a new dam in reference to their works, and to the lack of proper fenders and strainers to protect against impurities that may get into the stream from the mills and works above the orators. It would seem that by proper modes and means which they could, without unreasonable pains and expense, have adopted and put in use, they could have secured themselves from the troubles complained of while the defendant was using his shingle-mill and letting the sawdust and waste from it go into the stream.

At the same time we fail to find from the evidence the wrongful intent and design on the part of the defendant, as charged in the orators' bill; and we also fail to find such a state of facts as would warrant us in holding that the defendant has so transcended his own rights in violation of the rights of the orators as riparian

owners in respect to the use of the water, within the scope of the bill, as to entitle the orators to the relief they pray.

As no exigency of the case would be served by our going into a critical analysis and discussion of the evidence, we deem what is above expressed as being sufficient for the occasion.

The decree of the chancellor is therefore reversed and the cause remanded, with a mandate that the bill be dismissed with costs.