WILLIAM H. LEONARD, Respondent, *v.* JAMES E. SPENCER et al., Appellants.

The owners of land upon which was a mill and mill pond, conveyed to defendants' grantors a portion, upon which the mill was located, with a perpetual right to maintain and use the waters of the pond. Subsequently plaintiff became the owner of the land covered by the pond, subject to the easements granted by the first conveyance. Plaintiff was at the time the owner of land near the pond, with a dwelling-house thereon, occupied by plaintiff and his family. *Held*, that while plaintiff, as owner of the land covered by the pond, could not maintain an action to have the pond removed and thus destroy defendants' easement, as owner of the adjoining lands he was not estopped from showing that the pond was a nuisance, dangerous to the health of himself and family, and from seeking to have it abated as such; that his purchase of the land covered by the pond did not alter his position with reference to his homestead, or take away his right to protect it from a nuisance.

Also, *held*, the fact that plaintiff is a stockholder and director of the defendant corporation which was operating the mill and using the pond did not, in the absence of evidence that he had in any way, as such director actually co-operated in causing the nuisance, bar him from maintaining an action to abate the same.

Also, *held*, the fact that the dam had been maintained a great number of years, and that, with the knowledge of the plaintiff and without objection on his part, the defendants had erected a large factory in place of a former one destroyed by fire to be and which was operated by the water drawn from the pond, was not such an acquiescence on his part as precluded him from maintaining the action, at least in the absence of evidence that defendants took some action in reliance upon the silence or acquiescence of plaintiff.

(Submitted January 26, 1888; decided February 10, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 9, 1884, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directed judgment for plaintiff. (Reported below, 34 Hun, 341.)

The court found that plaintiff, in 1866, became and ever since has been the owner of a piece of land containing about eighty acres, upon which is a dwelling, occupied by him and his family as a residence.

" That about twenty-five or thirty rods distant southerly from the residence of said plaintiff is a tract of land of about seventy-five acres, covered by a pond of shallow water, and commonly known as ' Kirby's Pond ; ' that said pond is caused by the construction of a dam across a small stream of water, and by the construction whereof, when the water flows over the top of the dam, about seventy-five acres of land are flooded, and about twenty acres of other low, wet and swampy land, at the northerly end of said pond, and near the dwelling of the plaintiff, are covered with water.   *   *   *   That when the water of said pond is drawn down about twelve or fifteen inches below the top of the dam, a large part of the said area is exposed to the action of the sun and air, without any covering of water, and the land so exposed is covered with a deep layer of mud and vegetable matter in a state of decomposition ; that from said pond and from the sides thereof, as they become bare and exposed to the sun, there emanate noxious, offensive and poisonous effluvia, malaria, exhalations and smells which taint, poison and corrupt the atmosphere, reaching to the dwelling-house of the plaintiff, and rendering the occupation of the premises dangerous to health ; that by reason thereof plaintiff, his family, children and grandchildren, have been made sick from time to time for several years past with chills and fever, and by reason whereof the plaintiff and his family have been compelled to leave his premises and take up his residence elsewhere from time to time at great expense.

" That the defendants, James E. Spencer and John S. Spencer, are the owners of land and buildings a short distance southerly from said dam, and are the owners as appurtenant to said land and buildings of certain water rights in said pond, and have the right as such to draw the water from said pond to the depth of four feet below the top of the dam ; that the defendant, The Spencer Optical Manufacturing Company, occupies the premises of the said defendants so situated, a short distance below said dam, as is before mentioned under defendants, James E. Spencer and John S. Spencer ; that the said defendants draw the water each and every year so far below

the top of the said dam as to expose a large area of the bottom of said pond near the residence of the plaintiff, as well as in other portions of said pond, and expose the same, which is full of organic vegetable matter in a state of decomposition, to the action of the sun, whereby and wherefrom emanate noxious, offensive and poisonous effluvia, malaria, exhalations and smells, which taint, poison and corrupt the atmosphere, and which exhalations, malaria and smells reach the dwelling-house of the plaintiff, and render the enjoyment of his premises dangerous to life and health, and by reason whereof the plaintiff, his wife, children and servants have been made sick from time to time with chills and fever; and by reason whereof the plaintiff, with his family, has been compelled to leave his said premises on divers occasions and take up his residence elsewhere at great expense.

" That before the commencement of this action the plaintiff notified the defendants that the said pond was a nuisance, and requested leave from them to abate the same, which request was declined on the part of the defendants.

" That the said pond, for many years, has been a prolific source of malaria, chills and fever, and intermittent fever in the neighborhood thereof.

" That the said pond so made, maintained and used as aforesaid, is a special injury to the premises and residence of the plaintiff, not only affecting the health of the plaintiff and his family, but depreciating the value of his said premises and rendering the occupation thereof as aforesaid as a residence, hazardous to the health of the occupants of the same; that the said pond so made, maintained and used as aforesaid, is a nuisance; the continuance whereof will deprive the plaintiff of the enjoyment of his property, and renders the same comparatively worthless."

The further material facts are stated in the opinion. The judgment of the General Term is as follows :

" *First.*— That the dam and pond mentioned in the pleadings and findings of fact herein be abated and destroyed as a nuisance; and that the plaintiff be and hereby is authorized,

empowered and directed to remove the said dam as an obstruction to the natural course and flow of the water (heretofore restrained by said dam) as it flowed before any dam or obstruction had been erected there.

"*Second.*— That the defendants and their servants and all other persons be and they hereby are perpetually enjoined and restrained from interfering with the plaintiff and his servants and agents, in removing and abating the said dam and pond and in draining the water from the said pond and the land whereon the said pond has existed or overflowed; and that the defendants and their servants and agents and all other persons be and they hereby are perpetually enjoined and restrained from constructing, maintaining, continuing or rebuilding or renewing the said pond by means of a dam or obstruction."

*Martin J. Keogh* for appellants. A court of equity will not allow a party to assert or enforce a legal right, in a case when such party has permitted the defendants to expend large sums of money upon an object inconsistent with the right sought to be enforced. (*Williams* v. *Earl of Jersey*, 1 Cr. & Ph. 91; *Bassett* v. *Salisbury*, 47 N. H. 426; *Wood* v. *Sutcliff*, 8 Eng. L. & Eq. 217; *Heenan* v. *Dewan*, 8 Grant's Ch. 438; *Bankart* v. *Houghton*, 27 Beav. 425; *Dawes* v. *Marshall*, 10 C. B. [N. S.], 697; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 354; *Hulme* v. *Shreve*, 4 N. J. Eq. [3 Green's Ch.] 116; *Dann* v. *Spurrier*, 7 Ves. 231.) A person may so encourage another in the erection of a nuisance, as not only to be deprived of equitable relief, but also to give the adverse party an equity to restrain him, from recovering damages at law for the nuisance. (*Cawdor* v. *Lewis*, 1 Y. & C. 427; *Short* v. *Taylor*, 2 Eq. Cas. Abr. 522.) A party, who knowingly, though passively, encourages another, to expend money under an erroneous opinion of his rights, will not be permitted to assert his title, and thereby defeat the just expectation upon which such expenditure was made. (*Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 354; *Brown* v. *Bowen*, 30 N. Y. 519; *Town* v. *Needham*, 3 Paige, 545; *Thompson* v. *Blanchard*, 4 N. Y. 303;

*Storrs* v. *Barker*, 6 Johns. Ch. 166; *Brown* v. *Brown*, 30 N. Y. 519; *Williams* v. *Earl of Jersey*, 1 Cr. & Ph. 97; *Hulme* v. *Shreve*, 4 N. J. Eq. 116.) The plaintiff is bound by that which would have bound those under whom he claims; with regard to the subject-matter of the claim, he stands in the shoes of Jane and Leonard Kirby, and can have no greater or better rights than they. (*Bank* v. *Risley*, 4 Denio, 480; *Freeman* v. *Auld*, 44 N. Y. 50; *Sands* v. *Church*, 6 id. 347; *Hartley* v. *Harrison*, 24 id. 170.) It is a well known rule of law, that a man who accepts under a deed, cannot dispute the facts which it recites. (*Freeman* v. *Auld*, 44 N. Y. 50; *Sands* v. *Church*, 6 id. 347; *Hartley* v. *Harrison*, 24 id. 170; *Bank* v. *Risley*, 4 Denio, 480; *Denn* v. *Cornell*, 3 John's. Cas. 174; *Springstein* v. *Schermerhorn*, 12 Johns. 357; *Funk* v. *Newcomer*, 10 Md. 301–316.) An equitable estoppel exists as to plaintiff, analogus to the case of an omission to claim title when another improves the land. (*Brown* v. *Bowen*, 30 N. Y. 541.) This question of estoppel is a question of fact, not a question of law. (*Brown* v. *Bowen*, 30 N. Y. 519.) The plaintiff, on account of his covenants, connection with the defendant company, leases, acts and conduct, arising out of his privity in law, and privity in estate with defendants' grantors, cannot maintain this action. (*Adams* v. *Popliam*, 76 N. Y. 410.) Plaintiff has been guilty of such *laches* as to deprive him of the relief sought by this action. (*Swaine* v. *G. N. R. Co.*, 9 Jur. [N. S.], 1196; *Att'y Gen.* v. *N. Y. & L. B. R. R. Co.*, 24 N. J. Eq. 49; *Williams* v. *Earl of Jersey*, 1 Cr. & Ph. 92; *Aentz* v. *L. I. R. R. Co.*, 13 Barb. 647; *Swain* v. *Seamans*, 9 Wall. [U. S.], 254.) A court of equity will not grant relief in cases of this character, unless the existence of the nuisance be conclusively established. (2 Story's Eq. Jur. [12th ed.], § 924a; *Hart* v. *Mayor of Albany*, 3 Paige, 213.)

*Wm. H. Robertson* for respondent. There were enough injurious causes existing to constitute in law a nuisance which plaintiff was entitled to have remedied. (*Francis* v. *Schoelkopf*,

53 N. Y. 152; 51 id. 306; *Williams* v. *N. Y. Central R. R. Co.*, 16 id. 97, 111; 2 Story's Eq. Juris., §§ 925, 927; Willard's Eq. Juris., 391.) Defendant's deed must be construed as authorizing only a lawful use of the waters of the pond. (*Francis* v. *Schoelkopf*, 53 N. Y. 152.)

EARL, J. Besides denying the allegations contained in the complaint, the answer of the defendant sets up but two defenses, one of which is that the mill pond "has existed in the place where it now is for more than 100 years, and during all the time of its said existence the plaintiff or his grantors have, with the exception of about a year or two last past, assented to and acquiesced in the maintenance of the said pond and the dam by which it was caused;" and the other is that "on or about the 1st day of February, 1864, Jane Kirby and Leonard Kirby, being then the owners in fee of the lands now covered by said pond, and owned by the plaintiff, and also of the lands owned by the defendants, James E. Spencer and John S. Spencer, and leased by them to the defendant, The Spencer Optical Manufacturing Company, as set forth in the amended complaint, did execute and deliver for a valuable consideration to Catherine H. Halstead, wife of Isaac Halstead, and Patience Ann Halstead a deed and conveyance in writing bearing date on that day, and afterwards on the 17th day of February, 1864, recorded, etc., wherein and whereby the said Jane Kirby and Leonard Kirby granted and conveyed to the said Catherine H. Halstead and Patience Ann Halstead the said lands now owned by the said defendants, James E. Spencer and John S. Spencer, and occupied by the defendant, The Spencer Optical Manufacturing Company, which deed contained the following covenants with others, to wit:

"Also the right to the said party of the second part, her heirs and assigns forever, in common with Jane Kirby, her heirs and assigns forever, to the use of the waters of the large pond known as the 'Kirby Mill Pond,' with access at all times for both parties to the gates to turn the water on or off, the water to be used only during the regular working days and in the

regular hours — that is eleven hours during each day of twenty-four hours. And it is hereby expressly covenanted and agreed by and between the respective parties to these presents, and their heirs and assigns respectively, that neither party to these presents hath or shall have, nor shall their heirs and assigns respectively have any right to use the water in the said large pond when it falls below four feet from the top of the dam; but whenever the water shall be running over the said mill dam either party may use the water so long as it runs over the dam, for so many hours a day, as they wish. It is also mutually agreed that the small pond, near the dwelling-house of Cornelia Geer, formerly of Jane Kirby, is to be kept full of water; that the upper and lower dam shall be kept always in order, and the expense therefor shall be borne equally, one-half thereof by the said Jane Kirby, her heirs and assigns, and one-half thereof by the said party of the second part to these presents, her heirs and assigns;" that the plaintiff received by mesne conveyances from the said Jane Kirby and Leonard Kirby, and now holds title to and ownership of the lands covered by said Kirby's pond, now owned by him, subject, however, to all the covenants aforesaid, and to all the easements in and over the same in said deed conveyed to said Catherine H. Halstead and Patience A. Halstead; and that in the autumn of 1873, the said Catherine H. Halstead and Isaac Halstead, her husband, and the said Patience A. Halstead, conveyed by deed to the defendants, James E. Spencer and John S. Spencer, the lands now held and owned by them, as set forth in the amended complaint, with all the privileges, rights, estates and easements in and to the lands now of the plaintiff, covered by said Kirby's pond, which were granted or conveyed to said Catherine H. Halstead and Patience A. Halstead by said Jane Kirby and Leonard Kirby, as aforesaid, and that the said defendants are now the rightful owners and holders thereof."

The trial judge found all the material facts alleged in the complaint as to the nuisance maintained by the defendants and its effects to be true. As to the acquiescence of the plaintiff he

found substantially as follows: That the pond is an ancient pond, and existed in substantially the same condition as it now is at the time when and for a great many years before the plaintiff became the owner of his dwelling-house with notice of the rights and easements of the defendants and their grantors in, to and over the pond and the lands covered thereby; that in the year 1877, and several years after the plaintiff had owned and resided in his dwelling-house, the defendants James E. Spencer and John S. Spencer being owners of the land conveyed to them as alleged in their answer built thereon, with the knowledge and acquiescence of the plaintiff, and without objection on his part, a large factory for the manufacture of optical instruments, which was operated and worked by the water drawn from the pond as a reservoir under the terms and conditions of the covenants set out in the answer; that thereafter the factory was burned down, and another large factory for the same purpose, and operated in the same way was built by the defendants at great expense, and with the full knowledge and acquiscence of the plaintiff and without objection or complaint on his part; that the defendant, The Spencer Optical Manufacturing Company is a corporation; that the plaintiff was a director and stockholder in the corporation, and had regularly since he became a stockholder received and accepted and still receives and accepts his share of the dividends representing his share of the profits in the corporate business. The trial judge also found the conveyances affecting the pond referred to in the answer; and the conclusion of law upon which he based his decision in favor of the defendants is as follows:

"That the plaintiff as the owner of said pond and the lands covered thereby through mesne conveyances from the said Jane Kirby, is bound by all the covenants and agreements contained in the said deed of the lands now occupied by the defendant, The Spencer Optical Manufacturing Company, to said Catharine H. Halstead and Patience Ann Halstead, as aforesaid, including the rights of the said Catharine H. Hal-

stead and Patience Ann Halstead, their heirs and assigns, to the use of said pond and the water thereof, as set forth in said deed, and is estopped from claiming that the said pond is a private nuisance to him or his family, and from maintaining this action against the defendants, the assignees of the said Halsteads, to have the same drained, and to have the said defendants' rights, privileges and easements therein cut off."

He made no ruling whatever as to the effect of the alleged acquiescence on the part of the plaintiff.

It is no bar to the maintenance of this action that the plaintiff was a stockholder and director of the defendant corporation. He had a small amount of the stock, and it does not appear in the case what action, if any, he ever took as a director. He had a right to hold his stock and receive his dividends, and yet complain of any nuisance which the corporation might commit or maintain, and sue for any damages which it might inflict upon him. If it had appeared that, as director, he had in any way actually co-operated with others to cause the nuisance of which he now complains, he would not be entitled to any remedy for the damages which he suffered; but because he was a director and a stockholder he was not bound to permit the continuance of the nuisance, and he could, at any time, refuse to go further and ask to have the nuisance discontinued and abated.

There was no such acquiescence, within the meaning of the law, as deprives the plaintiff of the remedy which he now seeks for the abatement of the nuisance. It does not appear that he actively encouraged the defendants in the erection of their buildings and structures. They were erected upon their own land, and it was not within his power to interfere with or prevent their erection. All that can be said is that he did not make objection or protest against their erection, and that he did not give notice that the operation of the dam for the uses of the factory would prove detrimental or injurious to him. But what is still more important it does not appear that the defendants took any action whatever in reliance upon the silence or acquiescence of the plaintiff. Whether this pond

was dangerous to the health of the people who lived near it was a question greatly disputed upon the trial. A large number of witnesses gave evidence tending to show that it was not dangerous, while others gave evidence tending to show that it was the cause of much discomfort and sickness. There is no evidence whatever, that for any considerable time before the commencement of this action, the plaintiff was able so to solve this disputed question as to be thoroughly convinced himself, or to be able to establish that this pond was the cause of the sickness prevailing in his family, and in other families in its vicinity. He did from time to time make objection to drawing down the water in the pond and exposing the bottom thereof to the action of the sun and the winds. And finally when the nuisance became intolerable, and its effects appeared to him to be certain, he commenced this action. Under such circumstances, we do not think that within any of the authorities cited, there was such acquiesence on the part of the plaintiff as to bar the relief which he seeks. In *Radenhorst* v. *Coate* (6 Grant's Ch. R. 139), a similar allegation of acquiesence was made against the plaintiff who sought to restrain a nuisance caused by the business of a soap and candle manufactory carried on near his dwelling-house; and in that case SPRAGGE, V. C., said: "The omission to warn the defendant, and the subsequent forbearance to take any proceedings against him, are relied upon as disentitling the plaintiff to relief. We do not think that it is shown by the evidence that there was any encouragement on the part of Mr. Radenhorst, or that the defendant took any step or incurred any expense upon the faith of anything said or done by Mr. Radenhorst, or that Mr. Radenhorst's conduct had any influence in determining the defendant to do anything in regard to his factory. Putting it most strongly for the defendant, that the evidence will warrant, there was an acquiesence for several years in the defendant's carrying on his business as he did carry it on, but nothing more. It is a plain common law right to have the free use of the air in its natural unpolluted state, and an acquiesence in its being polluted for

.any period short of twenty years will not bar that right. To bar that right within a shorter period, there must be such encouragement or other act by the party afterwards complaining as to make it a fraud in him to object." These observations are quite applicable to this case. There is no finding here and no inference that the defendant ever assented to or acquiesed in the use of the pond in such a way as to produce the nuisance of which he now complains.

We are also of opinion that the ground upon which, the trial judge based his judgment is not sufficient to defeat this action. The plaintiff purchased the seventy-five acres upon which his house stands, in the year 1866, and he purchased the land embracing the mill pond in 1873, subject to the rights and easements which the defendants now claim therein. It is undoubtedly true that merely as owner of the land pur chased in 1873, he could not maintain an action against the defendants to compel them to take down the mill-dam and thus destroy their easement in the pond. But he also has rights as the owner of the seventy-five acres purchased in 1866, growing out of his residence upon that land and the special damages to him from the nuisance maintained by the defend- ants. As owner of that land he is under no estoppel. If he had not made the purchase of the pond property in 1873, he would have been in a position to maintain this action. And how does the purchase of that property alter his position with reference to the seventy-five acres of land upon which he lives? He has the right to protect that against this nuisance, and he is under no covenants and bound by no estoppel which takes that right away from him or renders it inoperative.

Even if the plaintiff had united with the defendants for a time in keeping up the dam, and used the waters of the pond for the purpose of running his grist-mill, yet when he found that the operation of the mill and the factory and the dam were producing this nuisance and destroying the health of his family, and rendering the occupation of his seventy-five acres uncomfortable and dangerous to health, he had the right to. abandon the use of his grist-mill and of the dam and insist

that the nuisance should be abated. The equitable relief which he seeks should not be denied to him because the abatement of the nuisance will cause great damage to the defendants, so long as the continuance of the nuisance will cause great, possibly greater damage to him Nor is there any proof or finding of such laches on his part as ought to bar his claim to relief. The defendants' factory was not upon his land, and they had the right to maintain the dam and to use the water of the pond, but not in such way as to cause the nuisance complained of. There is no finding that his laches produced any action on the part of the defendants, and it is clear that he could in no way have arrested the building of the factory. Assuming that he is entitled to relief, there is no claim that the relief granted by this judgment is too broad.

We therefore reach the conclusion after a careful consideration of the whole case, that the facts found by the trial judge entitled the plaintiff to the relief which he claimed, and that the judgment of the General Term is right and should be affirmed.

All concur.

Judgment affirmed