MARY H. STEARNS, Respondent, *v.* THE SCHENECTADY DAY NURSERY, Appellant.

WALTER M. STEARNS, Respondent, *v.* THE SCHENECTADY DAY NURSERY, Appellant.

Third Department, November 12, 1941.

*Herbert F. Hastings, Jr.* [*F. G. Mann* with him on the brief], for the appellant.

*Hughes & Loucks* [*Raymond F. Loucks* of counsel], for the respondents.

HEFFERNAN, J. Defendant has appealed from judgments of the Schenectady Trial Term of the Supreme Court in favor of plaintiffs, husband and wife, and from orders denying its motions for

new trials, in an action by the wife to recover damages for personal injuries and in a companion suit by the husband to recover for the loss of his wife's services and for expenses in her treatment and care.

The facts are substantially undisputed. Defendant was incorporated pursuant to the provisions of the Membership Corporations Law for the purpose of providing " at a reasonable charge, shelter and care for the children of working women of the city of Schenectady and adjacent towns during the hours when they are employed elsewhere than in their own homes " and maintain a home for such children. Those who are cared for in the institution receive two meals a day. For this service the corporation makes a small charge for each child of ten cents a day if one parent be employed and twenty cents a day if both parents are employed.

The corporation is governed by a board of managers, all women, including plaintiff Mary H. Stearns.

At the time she sustained her injuries, and for some time prior thereto, Mrs. Stearns, in addition to her membership in the board of managers, was a vice-president of defendant and also a member of its executive committee. For her services in these various capacities she received no remuneration whatsoever. Two members of the board of managers, appointed by the president, have special charge of the institution each month and it is their duty to inspect the buildings and premises and to report to the superintendent conditions that should be remedied. Mrs. Stearns served as a member of such committee in December, 1935.

Among other structures on the premises there is a grape arbor used by the children as a playground. This arbor is approximately sixty-three feet in length and twenty-six feet in width. It consists of three sets of upright posts, about six feet two inches in height, sunk in the ground with cross bearing beams of different heights and connecting timbers between the posts. The pavement under the arbor had been flagstone. During June, 1936, it became necessary to repair the same. Amesite was spread over the flagstones which raised the surface about two inches.

On July 25, 1936, two days before Mrs. Stearns sustained her injuries, the superintendent of the nursery discovered that the middle upright post in the arbor, which supported the second cross bearing timber, was considerably lower than the other posts, due to the fact that the post which was intended to support it had been eaten off at its base by termites. The superintendent made no report of this dangerous condition and gave no warning to any one of its existence.

On July 27, 1936, Mrs. Stearns came to the nursery to meet a Mrs. Blake, another officer of the institution, and to inspect a wall in the rear of the premises. While walking under the grape arbor with Mrs. Blake, Mrs. Stearns, who was five feet seven inches in height, struck her head against the sagging cross piece and sustained serious injuries. Upon inspection it was found that this particular cross piece was exactly five feet and four inches from the ground and was covered by foliage and grapes so that the condition was not readily observable to one entering the arbor. Earlier on the same day Mrs. Blake had attempted to pass under the arbor and had struck her head on the same sagging timber. She, however, failed to acquaint Mrs. Stearns of that fact.

As a result of the accident Mrs. Stearns sustained, among other injuries, a fracture of two vertebræ in her neck with a permanent limitation in rotation of about fifteen per cent. She was under the care of a physician for about a year and was obliged to wear two so-called " Thomas Collars " for many months in order to hold her head and neck in one position.

Defendant is seeking a reversal of the judgments on the grounds that no actionable negligence on its part was established, that Mrs. Stearns was guilty of contributory negligence as a matter of law and that in no event may plaintiffs recover damages against a charitable corporation of which the wife was a member.

On the facts which we have outlined it requires no argument to demonstrate that the questions of negligence and contributory negligence were properly submitted to a jury. There is ample evidence to sustain the verdict on these issues. On this record a jury might properly say that defendant's superintendent was negligent in failing to have the defective condition of the arbor repaired or in failing to notify Mrs. Stearns of its existence. The negligence of the superintendent is the negligence of defendant. The jury was also justified in absolving that plaintiff from the imputation of contributory negligence in failing to discover a hidden defect in the structure.

The fact that Mrs. Stearns was a member of the defendant corporation and one of its vice-presidents is no bar to the maintenance of these actions. (*Leonard* v. *Spencer*, 108 N. Y. 338.)

While the precise question was not presented for decision the Court of Appeals in *New York & New Haven R. R. Co.* v. *Schuyler* (34 N. Y. 30, 90) made this significant statement: " A railroad corporation would be liable for injuries sustained through the neglect of its employees, by a director (not riding on a free pass) notwithstanding the neglect is, legally speaking, that of the company, whose powers are exercised through the board of which

he is a member." A corporation is a legal entity entirely separate and distinct from its officers and directors. At the time she sustained her injuries Mrs. Stearns was not in active charge of the institution. She was under no obligation to inspect the premises. That duty was imposed upon the superintendent and the two members of the board of managers in charge that particular month. The fact that the superintendent and Mrs. Blake discovered the dangerous condition, and failed to disclose its existence, does not preclude Mrs. Stearns from maintaining this suit. Their knowledge, which concededly was not communicated to her, was not her knowledge. Notice to them was not notice to her. The argument is made that such knowledge is imputable to her. No authority is cited for such a startling proposition and we know of no principle of law which warrants such a conclusion. An officer of a corporation by virtue of her relation to the corporation, under the circumstances disclosed in this record, is not charged with the knowledge of other officers.

Defendant is not rendered immune from liability to plaintiffs by reason of the fact that it is a charitable corporation. There is a great deal of confusion in the decisions on this subject. The charity cases have turned on the "trust fund" theory, the supposed inapplicability of *respondeat superior*, or the doctrine of waiver of the right to sue for injuries suffered by any one during his acceptance of benefit from the charity.

Here the plaintiffs were not beneficiaries of defendant; on the contrary, Mrs. Stearns was one of its benefactors. It would be a prostitution of the concept of immunity to extend its scope to the case before us. It is doubtful whether the administration of justice has ever been well served by the immunity rule. However, it is not definitely settled in this State that the law of charities alone is insufficient to uphold immunity. (*Sheehan* v. *North Country Community Hospital*, 273 N. Y. 163.) In that case the Court of Appeals in a very illuminating opinion by Judge LOUGHRAN held that a charitable institution is liable to a beneficiary for personal harm caused by the negligence of one acting as its mere servant or employee. In the course of that opinion the court wrote that "no conception of justice demands that an exception to the rule of *respondeat superior* be made in favor of the resources of a charity and against the person of a beneficiary injured by the tort of a mere servant or employee functioning in that character."

The judgments and orders appealed from should be affirmed, with one bill of costs and disbursements to respondents.

HILL, P. J., CRAPSER and SCHENCK, JJ., concur; FOSTER, J., dissents, in an opinion.

FOSTER, J. (dissenting). I dissent from the opinion for affirmance and vote to reverse and dismiss the complaint. Plaintiff wife was not a stranger but an active participant in the management of the affairs of the corporate defendant. Not only was she a member of the board of managers, a position analogous to that of a director, and a member of the executive committee, but she was also a general officer, a vice-president of the corporation. If notice to the superintendent of a defective condition was notice to the corporation it was also notice to the general officers at least. If failure to repair was negligence on the part of the corporation it was also negligence on the part of its general officers at least, and plaintiff was one of them. It would not seem that responsibility for corporate management on the part of officers can be divided up so that one became responsible for a post, another for a floor and another for something else. Duties in this regard may be delegated of course, but responsibility should remain whole and indivisible. One officer should not be permitted to recover for failure to perform a duty that was a responsibility of all.

Judgments and orders appealed from affirmed, with one bill of costs.