DWIGHT PRINTING COMPANY *vs.* CITY OF BOSTON.

Middlesex.     Jan. 16. — 17, 1877.     MORTON & ENDICOTT, JJ., absent.
              Mar. 23. — June 28, 1877.     LORD &. SOULE, JJ., absent.

The award of a committee, appointed by the Superior Court under the St. of 1846, c. 167, § 6, or the St. of 1873, c. 242, § 4, to assess damages sustained from the taking of waters by the city of Boston and the town of Arlington respectively, can be revised only by claiming a trial by jury under the statute, and questions of law stated in such an award cannot be brought to this court by appeal or report from the Superior Court.

The taking by the city of Boston, under the St. of 1872, c. 177, § 1, of " all the water of Sudbury River," "for the purpose of furnishing a supply of pure water for the city," above a dam erected by it or in process of erection, and the filing in the registry of deeds of a description of the stream taken, within sixty days from the time of such taking, as provided by the St. of 1846, c. 167, § 1, is not such a taking as will enable a riparian owner above the dam to claim damages against the city, in the absence of any actual injury to his water rights.

A riparian owner has no right, in the absence of express grant or prescription, to pollute the waters of a stream, and make it unfit for drinking purposes.

PETITION to the Superior Court, filed October 18, 1875, under the St. of 1846, c. 167, § 6,* for the assessment of damages

---

* By the St. of 1846, c. 167, § 6, upon such a petition the " court may, upon default or hearing of the said city, appoint three judicious and disinterested freeholders of this Commonwealth, who shall, after reasonable notice to the parties, assess the damages, if any, which such petitioner may have sustained as aforesaid; and the award of the said freeholders, or of the major part of them, being returned into and accepted by the said court, shall be final, and judgment shall be rendered and execution issue thereon for the prevailing party, with costs, unless one of the said parties shall claim a trial by jury, as hereinafter provided."

sustained by the petitioner from the taking of the waters of Sudbury River by the respondent, under the St. of 1872, c. 177. The court appointed a committee of three freeholders, who heard the parties, and made an award, in which they stated the claims of the petitioner and certain facts agreed and admitted at the hearing before them, and determined that the petitioner had sustained no damages in its property by the said taking.

In the Superior Court, the award was accepted on January 4, 1877; and the petitioner appealed.

*G. A. Somerby & F. F. Heard*, for the petitioner.

*B. F. Butler & L. M. Child*, for the respondent.

GRAY, C. J. The manifest object and the necessary effect of the provisions of the Boston Water Act are that the committee of freeholders, appointed by the Superior Court, should act summarily and informally, and return simply the amount of damages, if any, which they find that the petitioner has sustained; that their award should not be subject to revision in matter of law by the Superior Court, or by this court on appeal, like an ordinary award of arbitrators returned into court; and that either party, dissatisfied with the award of the committee, and desiring a more regular and deliberate investigation of the questions of law or of fact involved in the case, must seek his remedy by claiming a trial by a jury before the Superior Court, as provided in the statute. St. 1846, c. 167, §§ 6, 7.

If the Superior Court had refused to appoint a committee, any question of law involved in such refusal might have been brought to this court by bill of exceptions. *Moore* v. *Boston*, 8 Cush. 274. Or if, after the return of the award of the committee, a trial by jury had been seasonably claimed, any ruling of the court in matter of law upon such claim, or at such trial, might

---

By § 7, "if either of the parties mentioned in the preceding section shall be dissatisfied with the amount of damages awarded as therein expressed, such party may, at the term at which such award was accepted, or the next term thereafter, claim in writing a trial in said court, and have a jury to hear and determine, at the bar of said court, all questions of fact relating to such damages, and to assess the amount thereof; and the verdict of such jury, being accepted and recorded by the said court, shall be final and conclusive, and judgment shall be rendered and execution issued thereon; and cost shall be recovered by the said parties respectively, in the same manner as is provided by law, in regard to proceedings relating to the laying out of highways."

have been revised in like manner. But the award of the committee upon the question whether the petitioner had sustained any damages, or upon the amount of such damages, could not be otherwise revised by the court below, and is not within the jurisdiction of this court upon appeal from the judgment accepting such award. *Northampton Bridge Case*, 116 Mass. 442.

*Appeal dismissed.**

In the Superior Court, on January 22, 1877, the petitioner claimed in writing a trial by jury, which was allowed; and the case was tried before *Brigham*, C, J., who directed a verdict for the respondent, and allowed a bill of exceptions, the substance of which appears in the opinion.

The case was argued by the same counsel.

AMES, J. By the St. of 1872, c. 177, entitled " An act to authorize the city of Boston to obtain an additional supply of pure water," the city is authorized to take, hold and convey to said city all the water of Sudbury River, " said water to be taken at any point or points within the town of Framingham,

---

* A similar decision was made in Middlesex, January 19, 1877, in the case of SAMUEL A. FOWLE & others *vs.* INHABITANTS OF ARLINGTON.

PETITION to the Superior Court, under the St. of 1873, c. 242, to assess the damages sustained by the petitioners from the taking of certain waters by the respondent. The court appointed three disinterested persons, who heard the parties, and made an award, in which they determined the amount which should be paid as damages to the petitioners, and reported certain facts found by them, and their findings of the law thereon, on which the award was based.

The petitioners moved that the award be accepted, and judgment rendered thereon for the amount ; the respondent objected to the acceptance of the award. *Colburn*, J., with the consent of parties, reported the case for the determination of this court.

*J. G. Abbott*, (*H. J. Wells* with him,) for the petitioners.

*B. F. Thomas*, (*J. H. Hardy* with him,) for the respondent.

GRAY, C. J. The provisions of the St. of 1873, c. 242, §§ 4, 5, are substantially like those of the St. of 1846, c. 167, §§ 6, 7, and the case is governed by the case of *Dwight Printing Co.* v. *Boston, supra*. The award of the committee cannot be revised, except through an application for a jury under the statute. To entertain jurisdiction of this case in its present form would be contrary to the letter and the spirit of the statute, and would make the judgment of the highest court of the Commonwealth subject to be set aside by the election of either party to have the matter tried anew by a jury.

*Report dismissed.*

or higher up on said river." Under this act, the city has the right to turn the whole of Sudbury River (except only so much as the act expressly reserves) into an aqueduct, in order to conduct its waters to the city from some point or points in Framingham or higher up the stream. In pursuance of the authority so given, the city has erected a dam in Framingham, which it may be assumed is capable of intercepting the entire stream and turning it from its regular course into the new channel which the city has constructed or is constructing to receive it. The written certificate or order, which has been filed and recorded in pursuance of the statute, expresses a purpose on the part of the city to take all the water of the river at and above that dam.

The statute proceeds, in the fifth section, to provide that the city shall be liable to pay all damages that shall be sustained by any persons in their property by the taking of or injury to any land, real estate, water, or water rights, or by flowage, or by the interference with or injury to any use or enjoyment of the water of said river to which any person at the time of such taking is legally entitled; and that, in regard to such taking, injury, interference and flowage, and the ascertainment and payment of all such damages, the city and all persons claiming damages shall have all the rights, immunities and remedies, and be subject to all the duties, liabilities and regulations, which are provided by the Sts. of 1846, *c.* 167, and 1850, *c.* 316. By the eighth section of the former of these two statutes, "no application shall be made to the court, for the assessment of damages for the taking of any water rights, until the water shall be actually withdrawn or diverted by the city under the authority of this act; and any person or corporation, whose water rights may be thus taken and affected, may make his application aforesaid at any time within three years from the time when the waters shall be first actually withdrawn or diverted as aforesaid."

The petitioner's claim is for an alleged injury to its right to use and enjoy the water of the stream in the prosecution of its business, in other words, for an injury to its water right. The point at which the city has taken, or professed to take, the water of the river, is below the petitioner's land. It does not complain that it has practically suffered, or that the dam will or can

cause it to suffer any actual inconvenience or damage from any diversion of water from its land, any diminution in its supply of water at its privilege, or from any obstruction causing the water to flow back upon its land, or to flow more slowly than it would, if left to its natural course. None of its land has been taken, and there has been no actual interference with or interruption to its use of any water rights that it has had or claimed in the stream.

The only injury which the petitioner professes to have suffered (passing over, for the present, the loss of the alleged right of fouling and corrupting the waters by works for dyeing and bleaching) is this, namely: that the filing of the order or certificate, required by the statute to be recorded in the registry of deeds, is an appropriation of all the waters of the river above the dam, and is equivalent in its effect to a warranty deed conveying those waters to the city by an absolute title. This, it is contended, takes from the petitioner the control and use of the water within its own limits, and places that control and use in the hands of another party having an adverse interest; and this, it is urged, is such an interference with, or rather subversion of, its rights in the premises as to furnish of itself sufficient ground for a claim for damages.

It is true that the terms of the statute authorize the city to take all the water of the river at and above Framingham, but only for the purpose of supplying the city with pure water. It is an authority which is to be exercised only by conducting the water by an aqueduct to the city. There is nothing in the act, making the city the owner of the bed of the stream, or the owner of the water in it, for any other purpose, or with a right to use it in any other manner. The riparian proprietors higher up still retain all their common law rights in the river, so far as they are not inconsistent with the use defined in the statute. They certainly are not prohibited from drawing water from the river for domestic purposes, or from watering cattle in it, or from cutting ice. It is not necessary to give to the St of 1846, *c.* 167, § 8, so literal a construction as to hold that a diversion or withdrawal of water is the only injury to a water right for which it furnishes any remedy. But, at the very least, it implies that there must be not merely a constructive, but a

literal and actual, interruption of or injury to the use of the water in order to render the city liable for damages. The statute assumes that the exercise of the authority given may incidentally injure some existing water right, and it makes ample provision in such case for indemnity. But the power given to the city may be so exercised as not in the slightest degree to interfere with water rights higher up the stream. The water which has turned the wheels of a mill may be returned to its natural channel in a condition as pure and fit for use as it ever was. It can hardly be supposed that the act, in such a case, authorizes the city to prevent the mill-owner from running his mill, or that there is any conflict in the rights of the parties.

By the erection of the dam, the city has selected the spot at which the water is to be diverted from its natural course. It is not necessary to contend that by so doing it has exhausted its power, and precluded itself from taking the water at some other point. But as it is obvious that the supply of water could hardly be increased by tapping the river higher up the stream, the respondent is at least entitled to say that it has not only done nothing as yet to practically diminish the petitioner's water power, but that there is at most only a remote possibility that it ever will do so.

The petitioner cites two recent decisions of this court, as having a bearing in support of its claim: *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363. *Wamesit Power Co.* v. *Allen*, 120 Mass. 352. Both of these were cases in which the injury complained of consisted in the diversion of water from a stream above the mill privilege of the petitioner. In the latter of these cases, it was decided merely that the city had no authority to make such a diversion, without having first filed and placed on record the certificate required by the statute, and that the workmen or agents employed by the city in so doing were trespassers. In the other case, it was held that a mere increase in the amount of water diverted was not to be considered as a new or original taking. Neither of these cases goes so far as to hold that there can be any claim for damages until there is an actual diversion of the water.

Another claim, put forward by the petitioner, is that the use which it proposes to make of the water of the river in bleaching

and dyeing woollen and cotton cloths, must befoul the water and render it unfit for drinking purposes, and that the statute in question deprives it of that right. But it is agreed that the petitioner has acquired no such right by any express grant or prescription; and it is well settled that, as a riparian proprietor merely, it has no such right. An injury to the purity or quality of the water, to the detriment of other riparian owners, constitutes in legal effect a wrong and invasion of private right, in like manner as a permanent obstruction or diversion of the water. *Merrifield* v. *Lombard*, 13 Allen, 16, and authorities there cited.

For these reasons, we are satisfied that the ruling of the court below was correct, and the petitioner's

*Exceptions are overruled.*