DWIGHT PRINTING COMPANY *vs.* CITY OF BOSTON.

Middlesex.    March 28, 1895. — September 6, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Waterworks — Statute — Taking of Water Rights — Damages.*

*It seems,* that the taking of a pond or a stream, with the water in it, is a taking of
the land and of the water of the proprietors of the pond or stream where the
taking is made, and is also a taking of the water rights of such other persons
as have the right to use the water elsewhere, such as lower proprietors on a
stream.

Under St. 1846, c. 167, authorizing the city of Boston to take water, water rights,
and land for the purpose of supplying the city with water, when what is called
land or water is taken, the petition for an assessment of damages for such taking
must be filed within three years from the taking, and when what are called
water rights are taken the petition must be filed within three years from the
time the water is actually withdrawn or diverted ; and this implies that what is
called a taking of water rights is a taking for the purpose of ultimately with-
drawing or diverting the water for the use of the city.

In the application of St. 1872, c. 177, to St. 1846, c. 167, (each statute authorizing
the city of Boston to take certain water, water rights, and land for the purpose
of supplying the city with water,) so far as remedies are concerned, it seems that
for every taking of land or of water, or for injury to or interference with land
or water or water rights not amounting to a taking of water rights, or for injury
to or interference with the use and enjoyment of the water of Sudbury River,
(so authorized to be taken,) the petition for an assessment of damages by any
person injured in his property must be filed within three years from the taking,
or from the act which causes the injury or interference, but when water rights
are taken the petition cannot be filed until the water is actually withdrawn or
diverted by the city.

The city of Boston, under St. 1872, c. 177, took " for the purpose of furnishing a
supply of pure water for the city " all the waters of Sudbury River and its trib-
utaries above a dam built by it below the premises of A., and at this dam the
city connected its aqueducts with the river and withdrew and diverted water
from the channel of the river to be conducted to the city.  Subsequently, the
city took substantially the same waters over again for the same purpose ; and
also took certain lands and waters, which were tributaries of the river above
A.'s premises, and water rights " for building and maintaining thereon a dam and
reservoir for storing water for the sole use and benefit of said city " ; and also
took and purchased certain mills and mill privileges on the river above A.'s prem-
ises " for the purpose of preserving and protecting the purity of the water for
said city."  The flow of the water in the river was not interfered with otherwise
than by maintaining the storage reservoirs constructed by the city and the dam
at the mills taken, and by operating the mills through a tenant in the same man-
ner as they were operated before the city took and purchased them.  No water
was actually withdrawn or diverted from the channel of the river or its tribu-

taries above A.'s premises. *Held,* that there had not been such a taking of A.'s water rights in the river as entitled him to maintain a petition for damages against the city for a taking of water rights.

PETITION, filed June 2, 1892, for an assessment of damages caused to the petitioner's mills and mill privileges in Ashland by the taking of the waters of Sudbury River and its tributaries by the respondent city, under the provisions of St. 1872, c. 177. A plan showing the lands and waters in question is printed on the opposite page.

Trial in the Superior Court, without a jury, before *Bishop,* J., who refused to rule, as requested by the respondent, that the petition could not be maintained, and found and assessed damages for the petitioner in the sum of $133,700, as if all the water of the river subject to the restrictions of St. 1872, c. 177, had been actually withdrawn and diverted from the mills of the petitioner. The respondent alleged exceptions. The facts appear in the opinion.

The case was argued at the bar in March, 1895, and afterwards was submitted on the briefs to all the judges.

*A. J. Bailey,* for the respondent.

*F. P. Goulding & E. C. Bumpus,* for the petitioner.

FIELD, C. J. By the St. of 1846, c. 167, the city of Boston was authorized to take the water of Long Pond, etc., and the water which may flow into and from it, and any other ponds or streams within the distance of four miles from said Long Pond, and any water rights connected therewith ; and also to take land around the margin of Long Pond, and all land necessary for constructing reservoirs and laying aqueducts for the purpose of supplying the city of Boston with pure water. In the sixth section of this statute it was provided that the city should be liable to pay all damages that should be sustained by any persons in their property by the "taking of any land, water, or water rights," or by the constructing of any aqueducts, reservoirs, or other works, and that if the owner of any "land, water, or water rights" shall not agree with the city upon the damages, he may apply by petition for the assessment of his damages, at any time within three years from the "taking of the said land, water, or water rights."

By the eighth section of the statute it was provided as follows:

"No application shall be made to the court for the assessment of damages for the taking of any water rights, until the water shall be actually withdrawn or diverted by the said city under the authority of this act; and any person or corporation whose water rights may be thus taken and affected may make his application aforesaid at any time within three years from the time when the waters shall be first actually withdrawn or diverted as aforesaid."

It is not entirely clear what is meant by the distinction be-
tween the taking of water and the taking of water rights, but
it may be suggested that, in general, the taking of a pond or a
stream, with the water in it, is a taking of the land and of the
water of the proprietors of the pond or stream where the taking
is made; and is also a taking of the water rights of such other
persons as have the right to use the water elsewhere, such as
lower proprietors on a stream. It is plain, however, whatever
the distinction may be, that, under the statute, when what is
called land or water is taken, the petition must be filed within
three years from the taking; and that, when what are called
water rights are taken, the petition must be filed within three
years from the time the water is actually withdrawn or diverted.
This implies that what is called the taking of water rights is a
taking for the purpose of ultimately withdrawing or diverting
the water for the use of the city of Boston.

By the St. of 1872, c. 177, § 1, the city was authorized to take
all " the water of Sudbury River, so called, said water to be taken
at any point or points within the town of Framingham, or higher
up on said river, and the water of Farm Pond, so called, in said
town of Framingham, and the waters which may flow into and
from said river· and pond, and to take any water rights in or
upon said river or pond, in or above the town of Framingham,
or connected therewith." The city was also authorized by this
section to take and hold, by purchase or otherwise, in connec-
tion with the said sources of supply, any lands and real estate
necessary for increasing or preserving the purity of the water,
or for the laying, building, and maintaining aqueducts, water-
courses, reservoirs, dams, buildings, etc., for the purpose of con-
ducting, elevating, purifying, storing, discharging, disposing of,
and distributing water, etc. By the fifth section of this statute
the city is made liable " to pay all damages that shall be sus-
tained by any persons in their property, by the taking of or
injury to any land, real estate, water, or water rights, or by the
flowage of the lands of any persons, or by the interference with
or injury to any use or enjoyment of the water of said river to
which any person, at the time of such taking, is legally entitled,
or by any other doings under this act; and in regard to such
taking, injury, interference, and flowage, and the ascertain-

ment and payment of all such damages, the said city of Boston, and all persons claiming damages, shall have all the rights, immunities and remedies, and be subject to all the duties, liabilities, and regulations," provided in St. 1846, c. 167, and St. 1850, c. 316.

In the application of the St. of 1872 to that of 1846, so far as remedies are concerned, it seems that for every taking of land or of water, or for injury to or interference with land or water or water rights not amounting to a taking of water rights, or for injury to or interference with the use and enjoyment of the water of Sudbury River, the petition for damages by any person injured in his property must be filed within three years from the taking or from the act which causes the injury or interference; but when water rights are taken, the petition for damages cannot be filed until the water has been actually withdrawn or diverted by the city.

On January 21, 1875, the city took all the water of Sudbury River at and above the dam built by the city of Boston in 1872 in Framingham, and all the water in the said dam to the source or sources of said river, all the water in Farm Pond, all the water in the brook connecting Farm Pond with the water of Sudbury River, and all the water in all streams, brooks, rivulets, or watercourses of any kind, whether natural or artificial, that may flow into or from said Farm Pond or into or from said Sudbury River at any point above said dam, subject to the restriction set forth in St. 1872, c. 177, § 4. The dam referred to was built below the premises of the petitioner, and it is at this dam that the city of Boston has connected its aqueducts with Sudbury River, and has withdrawn and diverted water from the channel of the river to be conducted to the city of Boston. The effect of this taking upon the rights of the petitioner to damages was considered in a case between the same parties as the present, which is reported in 122 Mass. 583.

On July 29, 1890, the city in form took substantially the same waters over again, and also took for " building and maintaining thereon a dam and reservoir for storing water for the sole use and benefit of said city," certain parcels of land, including Whitehall Pond, so called, and the lands about it and under it, and the water rights in the pond and in the waters thereof, and

the streams and ponds forming a part thereof and tributary thereto.

On August 14, 1890, the city also took certain parcels of land near Indian Brook, so called, including the brook, the water and the water rights in it, and in all the streams and brooks tributary thereto, for the purpose of " building and maintaining thereon a dam and reservoir for storing water for the sole use and benefit of said city."

Indian Brook and Whitehall Brook, which is the outlet of Whitehall Pond, empty into the Sudbury River above the premises of the petitioner. All the damages for the taking of Whitehall Pond and of Indian Brook, and of the waters thereof and of the water rights therein, and of the lands under and about the same, we understand, have been agreed upon by the parties and paid by the city.

The city, on January 27, 1891, bought and took conveyances of the Chattanooga Mills and mill privileges, including the mill-dam and mill-pond which are on Sudbury River above the premises of the petitioner, having, on January 2, 1891, taken said mills and mill privileges, mill-dam, and mill-pond, under the statutes hereinbefore recited, " for the purpose of preserving and protecting the purity of the water for said city, for the sole use and benefit of said city," and the city maintains the dam and pond, and permits the water of Sudbury River to run over the dam without any other interference with the stream.

The city also, on October 29, 1891, bought and took a conveyance of the Rocklawn Mills and mill privileges, including the mill-dam and mill-pond on Sudbury River several miles above the Chattanooga Mills; and on the same 29th day of October took, under the statutes hereinbefore recited, the said mills, dam, pond, and privileges " for the purpose of preserving and protecting the purity of the water for said city, for the sole use and benefit of said city," and the city has taken possession of the mills, and has let them to a tenant who has continued to operate said mills by means of the said dam and pond, and has controlled the water of the river for that purpose. It does not appear that the tenant has controlled the water in any other manner than a proprietor of an upper mill privilege at common

law has a right to do.  No water whatever, from any source, has been actually withdrawn or diverted from the channel of Sudbury River, or its tributaries, above the premises of the petitioner.

The only difference between the situation now and that at the time of the decision reported in 122 Mass. 583, is that White-hall Pond and Indian Brook, and the lands under and about them, and the water in them, have since that decision been taken by the city, and reservoirs have been constructed there, and are used for the purpose of storing water for the benefit of the city; and the water from these reservoirs is controlled in its flow into that river above the premises of the petitioner more or less by the city of Boston, for its benefit; and that since that decision the Chattanooga mill privileges and the Rocklawn mill privileges have been purchased by the city and also taken by the city, with the mill-ponds and mill-dams connected therewith, for the purpose of preserving and protecting the purity of the water of the river for the benefit of the city.  The flow of the water in Sudbury River has not been interfered with otherwise than by maintaining the storage reservoirs as aforesaid, and the dam at the Chattanooga Mills, and by operating the Rocklawn Mills in the same manner as they were operated before the city purchased and took them.

It is not contended by the petitioner that all the powers granted to the city by St. 1872, c. 177, were exhausted by the taking of the water of Sudbury River and of its tributaries on January 21, 1875.  The petitioner in effect admits that under said stat-ute there may be successive takings at different times by the city, and it files its petition under the special takings of Indian Brook, Whitehall Pond, Chattanooga Mills, and Rocklawn Mills, all of which were made long after the taking of January 21, 1875.  The contention of the petitioner, as we understand it, is that by the taking of January 21, 1875, and by the taking of July 29, 1890, of substantially the same effect, the city took all of the water rights of the petitioner, at and above the dam of the petitioner, in all of the water of Sudbury River and of its tributaries above the dam, subject, of course, to the restrictions imposed by the St. of 1872 ; and that by the other subsequent acts of the city of Boston hereinbefore recited, some of the

water of the river or of its tributaries has been actually with-drawn or diverted from the river above the dam of the peti-tioner, within the meaning of St. 1846, and that therefore the petitioner is entitled to maintain its petition for damages sus-tained in the taking of all its water rights in said river and its tributaries.  This contention is made on the theory that all of its water rights in the river have been taken, subject to the restrictions of the St. of 1872, and that the time of the filing of the petition for damages sustained by such taking was only post-poned until there had been some withdrawal or diversion of the water, and that when this occurred, even though only a small part of the water was withdrawn or diverted, the right to file a petition for all the damages sustained by the taking accrues, and that the damages are the same as if all the water of the river subject to the restriction of the statute of 1872 had been actually withdrawn or diverted.

It is plain that there has been no actual withdrawal or di-version of any water from the channel of Sudbury River, in the ordinary sense of those words.  We understand that the dam-ages for the takings of Whitehall Pond and Indian Brook, and their tributaries, have been paid, although this is not entirely clear from the exceptions.  The interference with the flow of the water in the river at Chattanooga Mills and Rocklawn Mills is no greater than existed before these mills were purchased and taken by the city, and it may deserve to be considered whether it is anything more than what the proprietor of lands on a run-ning stream can rightfully cause in the exercise of his common law right to make a reasonable use of the water as it flows through his land.  There is nothing in the takings of Chatta-nooga Mills and Rocklawn Mills and their tributaries which purports to be a taking for the purpose of diverting the water, or withdrawing it from the channel in which, before the taking, it was accustomed to run.  As the St. of 1872 provides that damages may be recovered for an injury to or interference with water rights, or with the use and enjoyment of water, as well as for a taking of water rights, and an actual withdrawal or di-version of the water, it is entirely unnecessary to interpret the words "withdrawal or diversion" in an unusual or an unnatural sense.  We see no evidence of any actual withdrawal or diver-

sion of the water of Sudbury River above the premises of the petitioner within the meaning of the statute.

The fundamental proposition of the petitioner is, that the water rights of the petitioner in the water of the Sudbury River and its tributaries were taken by the city by its taking of January 21, 1875. Why the city adopted the form of taking which it used we do not know. The water of Sudbury River was actually withdrawn and diverted from the river for the use of the city of Boston at or just above the dam which the city erected in Framingham, and the water was actually taken at that point by the city. Having taken the water at that point, under the authority of the law, the city had a right to have the sources of the water naturally flowing in the river at that point kept in their natural condition, subject to such reasonable uses as upper proprietors on the river and its tributaries might make of the water. The right to have the water of all the tributaries of the river and of the river itself flow to the dam erected by the city as it had been accustomed to flow, subject to such reasonable uses, is secured to the city by the common law, and it was not necessary that there should be a special taking of the water rights throughout the whole extent of the river and its tributaries above its dam in order to secure to the city the natural flow of water to the dam.

It is evident, we think, that the city never understood that by this taking of January 21, 1875, it acquired any property in the river above its dam and pond in addition to what the common law gave it, for, so far as appears, the city never exercised any rights over the river above its dam and pond, except under a purchase or a new taking, such as is shown in the present case. The theory of the petitioner is in effect that the city, having acquired all the water rights above its dam by the taking of 1875, could at any time, if it should purchase or take land necessary for the purpose, enter its aqueducts into the river at any point above the dam of the petitioner, and withdraw the water, without any new taking of the water or water rights. We are of opinion that this is not the legal effect of the taking of 1875, or of the similar taking of 1890, but that, notwithstanding the form of the takings, the legal effect was to take the water of Sudbury River at and just above the dam which the city con-

structed in Framingham, where its aqueduct was connected with the river and where the water was withdrawn.

On this construction of the effect of the takings, there has been no general taking of all the water rights of the petitioner in Sudbury River above its dam, subject to the restrictions of the St. of 1872. If any of its water rights in the river above its dam have been taken, it is by the takings of Indian Brook, Whitehall Pond, Chattanooga Mills, or Rocklawn Mills, and we do not construe these takings as authorizing a withdrawal or diversion of the water from the channel of the river above the premises of the petitioner. On the construction that we have given to the statutes, and the effect of the takings by the city, if the city is liable for any damages to the petitioner, it is for interference with the use and enjoyment of the water by the petitioner, so far as there has been any interference with this use, or so far as the takings authorize any interference with this use beyond the right of interference which at common law the city is entitled to exercise by virtue of its ownership of property. We infer that full damages have been paid to the petitioner for all injuries sustained by the takings of Indian Brook and Whitehall Pond and their tributaries.; but if we are mistaken in this, then it may be that the petitioner is entitled to damages for such interference with the flow of the water in Sudbury River as the city may exercise under these takings. If by the taking of Chattanooga Mills or of the Rocklawn Mills for the purposes indicated by the taking the city can lawfully exercise rights of control over the water of the river beyond what belongs to it as proprietor of those mills, it may be that the petitioner is entitled to damages therefor, as for an injury to or interference with its water rights. We see no reason to doubt that the city could, under the statute of 1872, lawfully purchase those mill privileges, and hold them under the statutes, for the purpose of preserving the purity of the water, and it may deserve to be considered whether the city as such purchaser has not the rights which belong to the proprietors of land under and on a natural stream. If the operation of the Rocklawn Mills through a tenant is *ultra vires* of the city, this does not concern the petitioner if there is no invasion of its rights. There is nothing in the case indicating that the owner of the Chattanooga Mills, or of

the Rocklawn Mills, was under any obligation to the petitioner to use his mill-pond as a storage pond for the benefit of the petitioner.

On the view we have taken of the case, the exceptions must be sustained. Whether the petition should be dismissed, or should be retained for the assessment of damages for some interference, if there be any, with the use of the water by the petitioner, or for some right of interference with this use which the city has acquired by its takings, if it has acquired any, which yet does not amount to a withdrawal of the water or a right to withdraw it from the river, but which has caused or may cause injury to any rights which the petitioner has to have the water of Sudbury River flow past its premises as it was accustomed to flow, we need not now determine. *Exceptions sustained.*