PERCY PARKER *vs.* AMERICAN WOOLEN COMPANY.

Middlesex.    March 14, 15, 1907. — May 28, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Watercourse.   Equity Pleading and Practice,* Findings of master, Recommitting to master, Assessment of damages.   *Equity Jurisdiction,* To enforce riparian rights, Damages.

In the absence of grant or prescription, no riparian proprietor has the right to discharge noxious substances into a natural stream in such a manner as will pollute it materially to the substantial injury of a lower proprietor.

The owner of land upon a natural stream may maintain a suit in equity to restrain another proprietor above him on the stream from discharging noxious substances into it to such an extent as to destroy the purity of the water and render it unfit for use, although such pollution does not interfere with any use of the water which the plaintiff is making at the time of filing his bill.

The owner of land upon a natural stream may maintain a suit in equity to restrain another proprietor above him on the stream from discharging noxious substances into the stream in such a quantity as to affect the purity of the water when it reaches the plaintiff's premises so as to render it materially less fit for drinking or other uses than when it entered the defendant's premises, although the discharge of the noxious substances into the stream is incidental to the operation of a large and important manufacturing plant and is convenient and economical for such operation.

In a suit in equity by the owner of land upon a natural stream to restrain another proprietor above him on the stream from discharging noxious substances into the stream so as to render the water unfit for drinking and other uses, if the defendant has committed the wrongful acts complained of with the result alleged, it is immaterial whether or not other causes have contributed to the pollution of the stream.

The fact that land on a natural stream is leased does not prevent its owner and lessor from maintaining a suit in equity to enforce his riparian rights against an upper proprietor.

In a suit in equity by the owner of land on a natural stream to restrain an upper proprietor from polluting the stream by discharging noxious substances into it, a finding of a master that the defendant had not acquired any prescriptive right to pollute the waters of the stream, if justified by the evidence, will not be disturbed, although the evidence also might have justified a contrary finding.

In a suit in equity by the owner of land on a natural stream to restrain an upper proprietor from polluting the stream by discharging noxious substances into it, the justice who heard the case upon a master's report found that the plaintiff was entitled to an injunction, but declined to assess damages for the reason that no damages were found by the master and that the facts as they appeared from the master's report did not enable him to do so, and for the further reason that he did not think that he ought to be asked to assess the damages. The plaintiff moved that the case be recommitted to the master for the assessment of damages. The defendant objected, contending that the plaintiff, by his failure to file objections and exceptions to the master's report on the ground that it contained no finding of damages, had lost or waived his right to damages, and that the plaintiff's course of conduct in the case both before the master and before the justice amounted to a waiver of such claim. The case being reported to the full court to determine, among other things, whether the plaintiff had lost or waived his claim for damages, it was *held*, that it would be within the power of a single justice hearing the case to deny the plaintiff any further hearing as to damages, and that it also would be within his power to send the case back to the master for the assessment of damages, and it was ordered that the plaintiff be permitted to move for a recommitment of the case to the master for an assessment of damages, if he desired to do so.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 11, 1902, by the owner of a parcel of land through which runs a stream called Beaver Brook, in the town of Dracut, having thereon a paper mill operated by the plaintiff from 1883 continuously for a period of almost twelve years, and thereafter operated by another paper manufacturer under a lease from the plaintiff until he was prevented from carrying on the business of manufacturing paper there by the acts of the defendant alleged in the bill, against a corporation manufacturing woollen and other cloths and owning since April, 1899, a large tract of land in Dracut situated on both sides of Beaver Brook and including the bed of the brook, about one and one half miles up the stream from the land and mill owned by the plaintiff, and having thereon large mill buildings, which, with the mill privileges and water rights appertaining thereto, constitute a manufacturing plant known as the Beaver Brook Mills, to restrain the defendant from emptying into Beaver Brook at

any point above the premises of the plaintiff dyestuffs, chemicals, industrial or domestic sewage, scourings, acids, compounds of iron or of soap, or any other polluting matter, and from maintaining the height of the dam and flashboards upon its premises above the height at which they had been maintained previous to 1899, and from interfering with the natural flow of the water of Beaver Brook by holding back the water of the brook or otherwise; also praying that there might be an assessment of damages sustained by the plaintiff by reason of the quantities of dyestuffs, chemicals, industrial and domestic sewage, scourings, acids, compounds of iron and soap, and other polluting matter, which had been emptied into the brook from the defendant's premises since the defendant became the owner thereof, and by reason of the holding back of the water of Beaver Brook.

The case was referred to Charles P. Greenough, Esquire, as master. He made a report to which both the plaintiff and the defendant filed exceptions. The case was heard upon the master's report and the exceptions thereto by *Morton*, J., who sustained the exceptions of the plaintiff, and overruled those of the defendant. He ruled that upon the master's report and the evidence the plaintiff was entitled to an injunction restraining the defendant from discharging noxious substances into the stream which flows past the plaintiff's land and thereby corrupting its waters and rendering them unfit for drinking and domestic purposes and other uses. The justice filed a memorandum of decision which contained, among other things, the following:

"It seems to me that, taking the case as a whole, the master's findings are warranted by the evidence and are all that is required for the proper disposition of the case. It is plain, it seems to me, that the evidence warranted a finding that the defendant has discharged, or caused to be discharged, into the brook various substances and things of a deleterious nature and in quantities which have corrupted the waters of the brook and rendered them unfit for use in the paper business at the plaintiff's mill and for other purposes requiring clean water. I do not think that it had, or has, the right to do that. I do not think the plaintiff has lost his right to relief by laches, or anything resembling it, or that the defendant and its predecessors have acquired a prescriptive right to foul the stream. I do not

think that the master was bound to find how much of the various acids, chemicals, soaps, dyes, etc., which they used the defendants discharged into the brook, or what would be a reasonable use of the brook for these and other like purposes if they had the right to so use the brook. The defendant was and is bound to keep within its rights at its peril. Whether it has the right to make such use of the brook will be considered later. It does not seem to me, as I have already in substance observed, that the master has omitted to find any material facts. I do not think that the defendant can claim a right to foul the water because the plaintiff, by a proper system of sedimentation and filtration, could cleanse it. . . .

" This brings me to the plaintiff's exceptions. These involve, for the most part, in one form or another the question of the respective rights of the plaintiff and defendant in the waters of the brook. There is also a question as to the right of a party to an injunction in case of the invasion, or threatened invasion, of a right without actual damage. In view of the findings of the master, it would seem to be unnecessary to pass upon that question at this stage of the case, though I have no doubt that an injunction may issue in such a case, and that defendant's fourth exception should be overruled.

" The master has ruled, as I understand him, that a riparian proprietor may foul the waters of a stream under certain circumstances; that the question is in each case one of reasonable use, and that in passing upon that question the size and character of the stream, the density of population, the uses to which the stream has been and can be applied, the usages of the country in similar cases and the needs of the community, and the extent of the benefit to one party as compared with the injury to the other are all to be considered. I do not think this is a correct view of the law in its application to this case. I think that one riparian proprietor has no right to discharge into the stream substances and things which will tend to, and which do, corrupt and foul the waters thereof to the injury of a lower riparian proprietor. I think, moreover, that for him to do so is an invasion of the lower riparian proprietor's right which entitles him to relief, though no actual damage is shown. The question of relative benefit or injury has nothing to do with the matter, it seems to me. Each

riparian proprietor has a right to have the waters of the stream come to him in as pure and uncontaminated a condition as the character of the stream and the density of population along its banks will permit.

" Each riparian proprietor has a right to make a reasonable use of the waters of the stream as it flows through his land. But this does not include the right to make of the stream a sewer, or to discharge into it substances and things which will tend to corrupt and foul the waters thereof. A riparian proprietor cannot complain if, in consequence of the density of the population along its banks, and the multiplication of various kinds of business, the waters of the stream do not come to him as pure as they originally were. But when, as here, the waters of a stream come to the dam of a manufacturing establishment substantially clean and pure, I think the lower riparian proprietor has a right to insist that they shall be permitted to come to him in the same condition, and that nothing shall be discharged into them from the manufacturing establishment which will tend to corrupt them and render them unfit for use. The reasonable use which the owner of the manufacturing establishment may make of the stream does not include the right to corrupt and poison the waters thereof by turning acids, soaps, chemicals, dyes and other noxious substances into it. He must dispose of those in some other way, and the lower riparian proprietor is entitled to an injunction restraining him from discharging such things into the stream and thereby corrupting and fouling the waters thereof. In some cases a court of equity will decline to issue an injunction where the injury to the party complaining is very slight and may be entirely compensated by the payment of damages, and the consequences to the other party of an injunction will be most serious and altogether out of proportion to the damage complained of. But this is not one of those cases.

" I think that the master should have ruled, in substance, as requested by the plaintiff, that the defendant had no right to discharge noxious substances into the stream and thereby corrupt its waters and render them unfit for drinking and domestic and other uses, and that such action on its part constitutes an invasion of the plaintiff's rights, and that the plaintiff is entitled

to an injunction restraining the same. The plaintiff's exceptions to the refusal of the master to rule as thus requested, and to the rulings that were made, must, therefore, be sustained."

After the decision stated above the plaintiff filed in the case a motion " that a decree be entered therein in accordance with the findings of the court and of the master." At the hearing on this motion the plaintiff presented a form of decree which he asked to have entered.

The plaintiff requested the justice to take evidence on the question of damages sustained since the filing of the master's report up to the date of the decree, contending that the master's report showed what the damages were up to the time that the report was filed, and that the loss of the rent of his factory was the measure of the damages which he had sustained. The justice declined to take evidence as requested, and also declined to assess the damages to the date of the filing of the master's report, for the reason that no damages were found by the master and that the facts as they appeared from the master's report did not enable him to do so, and for the further reason that he did not think that he ought to be asked to assess the damages. He further declined a subsequent request of the plaintiff that he should re-read the evidence submitted with the master's report on the question of the plaintiff's damages and upon the basis of such evidence assess damages. Later the plaintiff moved to amend by adding to his motion for a decree a motion that the case be recommitted to the master for the assessment of damages in accordance with the rulings and findings of the court.

At the hearing upon this motion the defendant contended that the plaintiff, by his failure to file objections and exceptions to the master's report on the ground that it contained no finding of damages, had lost or waived his right to damages, that his course of conduct in the case both before the master and before the justice amounted to a waiver of his claim, and that the evidence before the master was insufficient for the assessment of damages.

Afterwards the plaintiff withdrew his motion to recommit the case for the assessment of damages without prejudice to his right, if any, to file and prosecute a similar motion after a re-

script from the full court, and at the suggestion of the justice asked that an interlocutory decree be entered in accordance with the memorandum of decision and that the case be reported to the full court for the purpose of determining the questions raised, including the question whether the plaintiff had lost or waived his claim for damages.

The justice ordered that an interlocutory decree be entered restraining the defendant from polluting the waters of the stream, with a stay of proceedings, and, being of opinion that this and his rulings so affected the merits of the controversy that the questions raised, including the question whether or not as the case stood the plaintiff had lost or waived his right to have his damages assessed, should be determined by the full court before further proceedings, he reported the case to the full court, such disposition to be made of it as should seem meet, saving, however, to the plaintiff his right, if any, to move subject to the defendant's objection that the case be sent back to the master for the assessment of damages, and without prejudice to the defendant's right to contend that the plaintiff's request to have the case reported at this stage against the defendant's objection constituted a further waiver.

F. N. Wier, (G. A. Sanderson with him,) for the plaintiff.

S. L. Whipple, (F. W. Kittredge & A. Lincoln with him,) for the defendant.

SHELDON, J.    It will be convenient in this case to consider first the questions raised by the plaintiff's exceptions to the master's report and to the ruling of the single justice thereon. That ruling was in substance that one riparian proprietor has no right to discharge into a stream substances which will corrupt and foul the waters thereof to the injury of a lower riparian proprietor; that a reasonable use of the waters of a stream by a riparian proprietor does not include the right to make the stream a sewer or to discharge into it such substances and things; and that upon the facts found by the master the plaintiff was entitled to an injunction restraining the defendant from discharging noxious substances into the stream and thereby corrupting its waters and rendering them unfit for drinking, and for domestic and other uses.    The master on the other hand ruled (stating together the rulings set forth in his report and those

given at the request of the defendant) that the right to dis-
charge waste into a stream and to pollute it, either mechanically
or chemically, to a reasonable extent, is one of the incidents to
the ownership of land on the banks; that the general principles
which govern the abstraction or diversion of water must govern
in respect to the deposit of waste matter in a stream, resulting
from the processes of manufacturing, that is, that a use of the water
may be made which is reasonable under all the circumstances
of the case; that what constitutes a reasonable use of water in a
stream in respect to the deposit of waste matter therein is a
question of fact to be determined from all the circumstances of
the case; that every riparian proprietor on a stream has the
right to have the water come to him in its natural condition
except so far as it is affected by a reasonable use of their prop-
erty by the owners or riparian proprietors above, and that in
determining whether such use of water in a stream with respect
to its pollution is reasonable all the circumstances should be
considered, and more particularly the size and character of the
stream, its condition, volume and rapidity, the density of the
population on its banks; the use to which the stream has been,
is and can be applied, the state of improvement of the country
in regard to mills and machinery, and the use of water as a pro-
pelling power; the established usages of the country in similar
cases and the needs, usages and wants of the community; the
necessity or importance of the use claimed by the defendant;
and the extent of the benefit to him as compared with the ex-
tent of the injury to the other party.

He also ruled that one who is asserting a right which at the
time does no damage, but which may operate by long continu-
ance to destroy or diminish the right of the plaintiff, even if
that right is not then exercised by the plaintiff and there is no
present intention of exercising it, will be restrained by injunc-
tion but that injunction will not be granted to restrain a nui-
sance when the result would be inequitable.

It is difficult, if not impossible, to reconcile all the decisions
which have been made upon the question of the right of riparian
proprietors to use the waters of streams flowing through or along
their lands. This is a common right, and each must exercise it
with all due regard to the rights of others, and each must submit

to that degree of inconvenience and hardship in the exercise of his rights which results from the existence of like rights in others. In such cases, each proprietor is entitled to use the stream in such reasonable manner, according to the usages and wants of the community, as will not be inconsistent with a like use by other proprietors above and below him. *Cary* v. *Daniels*, 8 Met. 466. *Thurber* v. *Martin*, 2 Gray, 394. *Gould* v. *Boston Duck Co.* 13 Gray, 442. Many of the decisions relied upon by the defendant are instances of the application of this rule. *Pitts* v. *Lancaster Mills*, 13 Met. 156. *Springfield* v. *Harris*, 4 Allen, 494. *Jones* v. *Portsmouth Aqueduct*, 62 N. H. 488. *Snow* v. *Parsons*, 28 Vt. 459. *O'Riley* v. *McChesney*, 49 N. Y. 672. Cases in which the proprietors of sawmills have been allowed to throw sawdust and similar refuse into the streams, frequently for the reason that the mills practically could not be run unless this was allowed to a reasonable extent, generally have been put upon the same ground. *Haskins* v. *Haskins*, 9 Gray, 390. *Hayes* v. *Waldron*, 44 N. H. 580. *Jacobs* v. *Allard*, 42 Vt. 303. *Canfield* v. *Andrew*, 54 Vt. 1. *Prentice* v. *Geiger*, 74 N. Y. 341. But permission to do this has been refused where it was found to make the water impure and unfit for drinking and domestic purposes; *Lewis* v. *Stein*, 16 Ala. 214; and the tendency of the later decisions is to restrict somewhat the liberality of the original rule. *Lockwood Co.* v. *Lawrence*, 77 Maine, 297. *Canfield* v. *Andrew*, 54 Vt. 1. *Red River Roller Mills* v. *Wright*, 30 Minn. 249. And in *Canfield* v. *Andrew*, *supra*, the court is careful to say in its opinion that no one is allowed to deposit any substance in a running stream that will pollute its waters to the injury of a lower riparian proprietor.

It is of course true that many of the uses which properly may be made of the water of a natural stream by the upper riparian proprietors will be likely to tend somewhat to defile the water. *Sprague* v. *Dorr*, 185 Mass. 10. Its use for watering cattle and for the irrigation of fertilized land, or for bathing or other domestic purposes, will·have directly that tendency. Water cannot be made to pass through the propelling machinery of a mill without becoming more or less impure; nor can the water be made available for any manufacturing use without some incidental deterioration of its quality. Surface drainage into the

stream will become more and more injurious to the condition of the water as population along its banks grows denser. No one has the right to complain of injury to the quality of the water coming from` any of these causes. Wells, J. in *Merrifield* v. *Worcester*, 110 Mass. 216, 219. The natural flow of surface drainage from occupied land or from streets, though much increased by the adoption of new systems, so as materially to injure the water of a brook into which it runs, will afford no cause of action to a lower riparian proprietor. *Bainard* v. *Newton*, 154 Mass. 255. Perhaps the decision in *Pennsylvania Coal Co.* v. *Sanderson*, 113 Penn. St. 126, can be justified upon the ground that the injury there complained of resulted in reality from the water pumped from the mine having drained over the surface of the ground into the brook; upon which reason indeed it is partly rested in the opinion of the court. See *Crossley* v. *Lightowler*, L. R. 3 Eq. 279.

We regard it however as settled that no riparian proprietor has the right to use the waters of a natural stream for such purposes or in such a manner as will materially corrupt it to the substantial injury of a lower proprietor, or to cast or discharge into it noxious and deleterious substances which will tend to defile the water and make it unfit for use. This was the doctrine laid down in *Wood* v. *Waud*, 3 Exch. 748. It has been maintained in the English courts. *Mason* v. *Hill*, 5 B. & Ad. 1. *Pennington* v. *Brinsop Hall Coal Co.* 5 Ch. D. 769, 772. It is affirmed in our own decisions. In *Merrifield* v. *Lombard*, 13 Allen, 16, it appeared that by the mode in which the defendant had conducted his business a large quantity of poisonous and corrosive substances was permitted to run into a stream, which defiled and corrupted the water to such an extent that the machinery in the plaintiff's mill, lower down on the same stream, was corroded and his use of the water for proper purposes was impaired and prevented; and the defendant was enjoined from continuing so to act, and the court said: " We know of no rule or principle of law by which such a mode of appropriation of a running stream, in the absence of any proof of a paramount right or title, can be justified or excused as against a riparian owner of land on the same stream below." In *Dwight Printing Co.* v. *Boston*, 122 Mass. 583, it was held that a riparian owner has no

right, in the absence of express grant or prescription, to use the waters of a stream for dyeing or printing woollen or cotton cloths in such a way as to pollute the water and render it unfit for drinking purposes.  The same doctrine has been incidentally affirmed in other decisions of this court.  *Washburn & Moen Manuf. Co.* v. *Worcester,* 153 Mass. 494, 497.  *Walker Ice Co.* v. *American Steel & Wire Co.* 185 Mass. 463, 471.  *New England Cotton Co.* v. *Laurel Lake Mills,* 190 Mass. 48, 52.  There is nothing inconsistent with it in *Harris* v. *Mackintosh,* 133 Mass. 228.  It has been repeatedly and strongly declared in other States.  "Riparian proprietors, mill-owners or others, have no right to render the water of a stream unwholesome or offensive."  *Richmond Manuf. Co.* v. *Atlantic DeLaine Co.* 10 R. I. 106.  *Silver Spring Bleaching Co.* v. *Wanskuck Co.* 13 R. I. 611, in which the court said : " The right of every owner of land bordering on a stream to the use of the water is well settled ; and the fact that he also owns a mill does not lessen his rights. . . . And he has a right to have the water pass his land in its natural, pure state."  *Bradley* v. *Warner,* 21 R. I. 36.  *Holsman* v. *Boiling Spring Bleaching Co.* 14 N. J. Eq. 335.  *Chapman* v. *Rochester,* 110 N. Y. 273.  *Middlestadt* v. *Waupaca Starch & Potato Co.* 93 Wis. 1.  In all these cases, it was held that the right of the lower riparian proprietor to the free use and enjoyment of the water of a natural stream extended as well to its quality as to its quantity.  And see the cases cited in Gould on Waters, § 219; Wood on Nuisances, § 427, *et seq.* ; Angell on Watercourses, § 136, *et seq.*  The right to use the stream to carry away mere waste matter in a reasonable manner and to a reasonable extent is not so to be extended as to include a right to discharge into the stream noxious and deleterious matter to such an extent as sensibly and materially to foul the water and destroy its purity and fitness to be used by others.

It is true that there is in any large body of water a purifying principle which will, either by ordinary sedimentary deposit or by chemical change, obviate the evil effects which otherwise would arise from the deposit therein of some limited amount of noxious matter.  Accordingly it is not for every small deposit of such matter that the law will give a remedy.  This was the case in *Brookline* v. *Mackintosh,* 133 Mass. 215.  There

doubtless must be a material and sensible deterioration of the quality of the water; and this was recognized in the rulings made by the single justice. So in *Townsend* v. *Bell*, 167 N. Y. 462, it was found as a fact that the defendant's use of the stream did not render its waters unfit for manufacturing, mechanical or domestic purposes. *Merrifield* v. *Worcester*, 110 Mass. 216, was decided on the doctrine that a city is not to be held in damages for having adopted an improper sewerage system.

Nor can we doubt that the plaintiff is entitled to an injunction to restrain the defendant from continuing to pollute the stream, in order to prevent it from gaining a prescriptive right, even though such pollution does not interfere with any use of the water which the plaintiff is now making. *Crossley* v. *Lightowler*, L. R. 3 Eq. 279. *Pennington* v. *Brinsop Hall Coal Co.* 5 Ch. D. 769, 772. *Brookline* v. *Mackintosh*, 133 Mass. 215, 224. And it follows from what we have already said that the plaintiff is entitled to an injunction which will restrain the defendant from discharging into the stream any noxious or offensive substances to such an amount or in such a quantity as to affect noticeably or appreciably the purity of the water when it reaches the plaintiff's premises so as to render it materially less fit for drinking or for other uses than it was when it entered the defendant's premises. *Sampson* v. *Hoddinott*, 1 C. B. (N. S.) 590. *Merrifield* v. *Lombard*, 13 Allen, 16. *Richmond Manuf. Co.* v. *Atlantic DeLaine Co.* 10 R. I. 106. *Holsman* v. *Boiling Spring Bleaching Co.* 14 N. J. Eq. 335. The court can fix no standard of reasonable use which will be more favorable to the defendant, or restrict any further the terms of the injunction to be issued. The defendant must at its peril see that it does not overpass this limit.

Nor can an injunction properly be refused on the ground of the magnitude of the defendant's interests and the importance of its business. Some stress was laid upon this consideration in *Pennsylvania Coal Co.* v. *Sanderson*, 113 Penn. St. 126; but the case was decided on other grounds. The same argument was urgently pressed to no purpose in the somewhat similar cases of *Lockwood Co.* v. *Lawrence*, 77 Maine, 297; *Silver Spring Bleaching Co.* v. *Wanskuck Co.* 13 R. I. 611; and *Holsman* v. *Boiling Spring Bleaching Co.* 14 N. J. Eq. 335. And here, as

in the case last cited, the effect of the injunction will not be to stop the defendant's works or to interfere with its manufacturing industry, but simply to restrain it from discharging offensive matter into the stream and thereby polluting the waters which flow through the plaintiff's land.   Here, as in that case, it does not appear that the offensive matter cannot readily and at small expense be otherwise disposed of; if a system of filtration or other purification is necessary, the expense of this should not be thrown upon the plaintiff.   *Richmond Manuf. Co.* v. *Atlantic DeLaine Co.* 10 R. I. 106.   Nor is it material that other causes have contributed to the pollution of the stream.   This does not excuse the defendant for its wrongdoing.   *Crossley* v. *Lightowler,* L. R. 3 Eq. 279.   This is the principle of *Corey* v. *Havener,* 182 Mass. 250, and *Oulighan* v. *Butler,* 189 Mass. 287, 293. Nor is this a case in which the defendant is simply discharging noxious matter into an already polluted stream.   It is expressly found by the master that the water when it reaches the defendant's premises " is good, clean, clear brook water, fit for any kind of manufacture or for domestic use."

The defendant has not argued that upon the facts found by the master the plaintiff is not the proper party to maintain this bill.   See *Starr* v. *Jackson,* 11 Mass. 518 ; *Hingham* v. *Sprague,* 15 Pick. 102 ; *Hastings* v. *Livermore,* 7 Gray, 194 ; *Cushing* v. *Kenfield,* 5 Allen, 307 ; *Davis* v. *Nash,* 32 Maine, 411 ; *Jones* v. *Chappell,* L. R. 20 Eq. 539.   And the finding of the master that the plaintiff has not lost his rights by laches was fully justified. *Morse* v. *Hill,* 136 Mass. 60, 66.   *Nudd* v. *Powers,* 136 Mass. 273, 277.   *Leonard* v. *Spencer,* 108 N. Y. 338.   *Tazewell* v. *Saunders,* 13 Grat. 354.   *De Bussche* v. *Alt,* 8 Ch. D. 286.

Accordingly we are of opinion that the plaintiff's exceptions to the master's report were rightly sustained, and that the rulings of law made by the single justice upon them were substantially correct.

The defendant's counsel have argued only certain particular questions arising upon their exceptions to the master's report; and it is not necessary to say anything more of the other specific exceptions than that we see no reason why they should be sustained.   There is no occasion as to them to add anything to what was said in the memorandum filed by the single justice.

1. The defendant's contention that the master was not justified in finding that the defendant made an unreasonable use of the waters of the stream does not call for any special discussion. We have already shown that this is not the material question to be considered. But we ought to add that in our opinion the findings of the master were warranted by the evidence, and were as favorable to the defendant as they properly could have been made.

2. Nor, for the same reasons, can the defendant's contention be sustained that the master should have fixed some standard of a reasonable use, and should have found how far the discharge of waste or other noxious matter by the defendant exceeded in quantity or character such a standard. This matter has been already sufficiently considered.

3. The finding by the master that the defendant had not acquired any prescriptive right to pollute the waters of the brook was justified. It may be that we could not have set aside a contrary finding ; but the question was for the master.

It remains to be determined whether the plaintiff has lost or waived his right to have his damages assessed, or whether the case may now, in the discretion of the court, be sent back to the master for their assessment.

We have no doubt that it would be within the power of the court to deny the plaintiff any further hearing as to damages. Nor have we any doubt that the court has also the power to send the case back to the master for the assessment of damages. *Regis* v. *Jaynes Co.* 191 Mass. 245. *Asp* v. *Warren,* 108 Mass. 587. It is at any rate possible that the plaintiff may be found to be entitled to large damages. If so, he ought not to be deprived of the opportunity to show this by reason of any mistake of his attorneys or of any misapprehension that may have arisen between the master and the attorneys.

Accordingly a decree should be entered that the exceptions of the defendant should be overruled, and that it be enjoined from emptying or discharging or permitting to be emptied or discharged into the brook upon its premises above the plaintiff's premises any acids, soaps, compounds of soap, or of iron, chemicals, scourings, dyestuffs, sewage, or any objectionable substances whatever, in quantities that noticeably or appreciably

affect the purity of the waters when they reach the plaintiff's premises, or render them materially less fit for drinking, domestic or other uses at that point than they are when they enter the defendant's premises, and that the plaintiff be permitted to move for a recommitment of the case to the master for an assessment of damages, if he desires so to do.

*So ordered.*