HONORA MACNAMARA *vs.* DAVID N. TAFT.

Worcester.    October 2, 1907. — December 31, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Watercourse. Equity Jurisdiction,* To enforce riparian rights.

Ordinarily the question whether the use of a natural stream by an upper riparian proprietor is reasonable is a question of fact, but the questions of fact which arise in determining whether such a use is reasonable are limited by certain rules of law.

The discharge of noxious substances into a natural stream in such quantities as materially to affect the purity of the water as it reaches the land of a lower riparian proprietor, if it interferes with his use of the water, is an invasion of his right of property and as matter of law is unreasonable. Following *Parker* v. *American Woolen Co.* 195 Mass. 591.

The owner of a farm through which flows a natural stream may maintain a suit in equity to restrain the owner of a mill above him on the stream from discharging oil, soap, soda, logwood, blue vitriol and other chemicals into the stream and thereby causing the plaintiff's cows to refuse to drink the water.

BILL IN EQUITY, filed in the Superior Court on August 29, 1906, to restrain the defendant from further polluting a natural stream or brook running through the plaintiff's farm in Oxford, praying also for the assessment of damages.

In the Superior Court the case was heard by *Lawton,* J., who found the facts which are stated in the opinion. He also found, if material, that the value of the plaintiff's farm was $1,000, that she kept three cows on the farm and cultivated a portion of it, that the value of the defendant's mill was $40,000, that it sent out each winter about nine thousand yards of cloth of a total annual value of about $200,000, that it gave employment to sixty persons and had a weekly pay roll of $600.

The judge made a decree that a perpetual injunction issue restraining the defendant from polluting the brook by means of the substances used as washers in his mill, and that the defendant pay to the plaintiff the sum of $75 as damages and the costs of suit. The defendant appealed.

*C. M. Thayer*, (*R. J. Hastings* with him,) for the defendant.

*E. H. Vaughan*, (*J. Clark, Jr.*, with him,) for the plaintiff.

KNOWLTON, C. J. The defendant owns a mill containing four sets of machinery for the manufacture of satinet cloth. It is upon a small stream which in its natural state is eight to twelve feet wide and from three to six feet deep. The mill is run in part by water power and in part by steam power. The plaintiff owns a farm containing about fifty acres of land nearly a mile below, through which the stream flows on its way to French River. This bill is brought to obtain an injunction against the pollution of the water by the discharge of noxious matter into it. The evidence shows that the defendant uses daily, at his mill, a large quantity of oil put upon the material before it is spun, and one hundred and eighty pounds of soap, one hundred and sixty-five pounds of soda ash, forty-five pounds of soda salts, two hundred pounds of extract of logwood and forty-three pounds of blue vitriol in fulling and dyeing his cloth. After these chemicals are put into the fulling mill and taken up by the cloth, the cloth is placed in washers and washed. A large part of the logwood and vitriol, and substantially all of the other chemicals, are washed out and discharged into the stream. The effect of this discharge is to make the water dark in color, and to give it an oily odor and taste such as to prevent the plaintiff's cows from drinking it, as they are pastured on the banks of the stream below.

The case involves a consideration of the rights of riparian proprietors in regard to the pollution of the waters of a stream by the discharge into it of waste and other noxious substances in the use of it. This subject has often been discussed by this court and by courts in other jurisdictions. It was fully considered with a citation of many authorities in the recent case of *Parker* v. *American Woolen Co.* 195 Mass. 591. In that case, as in the present, the stream under consideration was substantially unpolluted by manufacturing or other impurities and was nearly

in its natural state except for the acts of the defendant, and was not used under the authority of law for the discharge of sewage or other noxious substances, as some streams are which have been taken and appropriated to such a public use.  The general rule is that every riparian proprietor on a stream has a right to have the water come to him in its natural condition, except so far as it is affected by the reasonable use of their property by the owners above.  The doctrine of the decision in *Merrifield* v. *Lombard*, 13 Allen, 16, is correctly started in the headnote as follows : " The owner of land through which a natural stream of water passes has no right to use the water for such purposes as will corrupt it to the material injury of the riparian owners below." Chief Justice Bigelow says : " An injury to the purity or quality of the water, to the detriment of other riparian owners, constitutes in legal effect a wrong and an invasion of private right, in like manner as a permanent obstruction or diversion of the water."   In *Dwight Printing Co.* v. *Boston*, 122 Mass. 583, the petitioner claimed a right to use the water in bleaching woollen and cotton cloths in such a way as to befoul it and render it unfit for drinking purposes.  The court said that it had acquired no such right by prescription, and added : " It is well settled that, as a riparian proprietor merely, it has no such right."   The two cases of *Walker Ice Co.* v. *American Steel & Wire Co.* 185 Mass. 463, 471, and *New England Cotton Yarn Co.* v. *Laurel Lake Mills*, 190 Mass. 48, 52, contain expressions in recognition of this doctrine. On the other hand there are cases in Massachusetts which recognize the fact that the water in a brook may lawfully be affected both in its quantity and quality by the legitimate use of an upper riparian owner.  *Merrifield* v. *Worcester*, 110 Mass. 216, 219. *Harris* v. *Mackintosh*, 133 Mass. 228, 231.   *Haskins* v. *Haskins*, 9 Gray, 390, 392.   *Washburn & Moen Manuf. Co.* v. *Worcester*, 153 Mass. 494, 497.   Ordinarily, the question whether the use of a stream by an upper riparian owner is reasonable is a question of fact.   The reason why such a question is open, in many cases, is that certain uses of a stream which are universally recognized as lawful may diminish the quantity of the water or affect its quality to some extent.  The watering of cattle may permanently abstract from the stream so much as they drink.   The use of land for the pasturage of cattle may roil the water as they

pass through it if the banks and bed of the stream are muddy, or cause the dropping of excrement into it which will slightly affect its quality when it reaches the land of the next owner, just across the boundary line. The cultivation of land may cause earth to be washed into the stream. Such uses, carefully regulated, are not unreasonable, and the right of the owner below is subject to the exercise of these rights by the upper proprietor. But the questions of fact which arise in determining whether a use is reasonable are limited by certain rules of law. One is that a permanent diversion of a substantial portion of the water, to the detriment of an owner below, cannot be found to be reasonable, although it may be convenient and profitable for the diverter. It is an invasion of a legal right. In like manner the discharge of a noxious substance into the stream in such quantity as materially to affect the purity of the water when it reaches the land of a lower riparian owner, if it interferes with his use of the water, is an invasion of his right of property, and as matter of law is unreasonable. But in a use of a stream, of a kind which is generally recognized among the people and in the courts as legal, a slight impairment of the quality of the water, which is necessary and incident to the use when properly and carefully regulated, is not unreasonable. These we think to be the rules that are deducible from the cases in Massachusetts and in other States. The case of *Richmond Manuf. Co.* v. *Atlantic DeLaine Co.* 10 R. I. 106, is much like the one now before us in its facts, and in it the right of the lower proprietor to have the water come to him unimpaired in its purity is stated strongly. The doctrine is reaffirmed in *Silver Spring Bleaching & Dyeing Co.* v. *Wansckuck Co.* 13 R. I. 611, and *Bradley* v. *Warner*, 21 R. I. 36. The subject is considered elaborately in *Lockwood* v. *Lawrence*, 77 Maine, 297. It is said in the opinion that " any diversion or obstruction which substantially and materially diminishes the quantity of water, so that it does not flow as it has been accustomed to, or which defiles and corrupts it so as to essentially impair its purity, thereby preventing the use of it for any of the reasonable and proper purposes to which it is usually applied, is an infringement of the rights of other owners of land through which the stream flows," etc. The same doctrine is laid down in *Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335, and

*Middlestadt* v. *Waupaca Starch & Potato Co.* 93 Wis. 1. See also *Chapman* v. *Rochester,* 110 N. Y. 273.

The cases of *Snow* v. *Parsons,* 28 Vt. 459, *Hayes* v. *Waldron,* 44 N. H. 580, and *Red River Roller Mills* v. *Wright,* 30 Minn. 249, are among the most favorable to the contentions of the defendant. The first of these cases was an action for damages caused by the discharge of tan bark into the stream from a tannery above, the second was for discharging sawdust and shavings from the defendant's mill into the river, and the third for discharging sawdust and other refuse from a saw mill into the stream. In each it was held to be a question of fact whether the defendant's use of the stream was reasonable, and in each there is language on the subject which suggests a liberal interpretation of the law in favor of the user. It is to be observed that the cases were all very different from the discharge of noxious substances into a stream, materially affecting the purity of the water as it enters the land of a riparian owner below. The business of each of the defendants was of a kind which is universally recognized as legitimate in the use of a stream, and there was ground for a contention that the damage to the defendant was no greater than might result as an absolute necessity from this kind of use, under careful and proper management. The case of *Snow* v. *Parsons, ubi supra,* is considered and explained in the later case of *Canfield* v. *Andrew,* 54 Vt. 1, in which the court says, " Such damages as are incident to, and necessarily result from, a proper use of the water must be borne; but the manufacturer has no right to do any act that in its consequences is injurious to others because it is a matter of convenience or economy for him to do it. It is as much the duty of a manufacturer to so dispose of his waste as not to injure others as it is to refrain from injuring others by any other act. No one is allowed to deposit any substance in a running stream that will pollute its waters to the injury of a riparian owner below."

No discharge of noxious waste, in quantities sufficient noticeably or appreciably to affect the quality of the water in the lands of a proprietor at a considerable distance below, is shown to be necessary in the business of manufacturing cloth, however convenient or profitable it may be to the manufacturer. If

filtering the water before returning it to the stream, after using it in the mill, is necessary to protect the rights of the lower riparian owner, or if chemicals or oils should be disposed of otherwise, the mill owner should make provision for it.

In view of its effect upon the use which the plaintiff desired to make of the water, there is no foundation for the defendant's contention that his discharge into the stream of oil, soap, soda, logwood, blue vitriol and other chemicals was reasonable. It was clearly proved that much of the time the plaintiff's cows refused to drink the water, and that thereby she suffered substantial loss and damage.

It is only when the owner in the stream below is materially affected in his right to use the water, by reason of its impurity as it enters his premises, that he has a remedy against the upper proprietor by whose use the quality of the water is impaired. For a slight impairment of quality, necessarily resulting from a reasonable use of the stream or of the land abutting on it, there is no liability. But the rules and principles so fully stated in *Parker* v. *American Woolen Co.*, *ubi supra*, forbid the unnecessary discharge of polluting substances into a stream in quantities that appreciably affect the purity of the waters when they reach the premises of a riparian proprietor below, and render them materially less fit for domestic or other uses to which they might be put there than when they come to the land of the owner who is charged with polluting them.

The evidence well sustains the findings, and there is no sufficient ground for the defendant's contention that the plaintiff is not entitled to equitable relief.

*Decree affirmed.*