PHILLIPS v. VILLAGE OF ARMADA.[1]

MUNICIPAL CORPORATIONS—TORTS—DISCHARGING SEWAGE—DAMAGES—EVIDENCE.

In an action against a village for damages arising from the deposit of sewage in an open ditch adjacent to plaintiff's home, and from the ditch into a stream flowing past his property, where there was no evidence from which the jury could determine the damage done by the sewer complained of and other sewers emptying into the same stream, the trial court should have eliminated the pollution of the stream from the consideration of the jury and limited plaintiff's recovery to damages done by the open ditch.

Error to Macomb; Erskine, J. Submitted November 17, 1908. (Docket No. 114.) Decided December 21, 1908.

Case by Austin H. Phillips against the village of Armada for injury to property from the deposit of sewage. There was judgment for plaintiff, and defendant brings error. Reversed.

*William T. Hosner* and *Seth W. Knight*, for appellant.

*James G. Tucker* and *Lynn M. Johnston*, for appellee.

The defendant village is a municipal corporation, organized under Act No. 3, Pub. Acts 1895. It is situated upon the banks of Deer creek, in Macomb county. From its source in St. Clair county, it flows through a well-settled farming community. The farming lands slope towards the creek, and the drainage from them naturally flows into the creek. On March 22, 1907, 2,500,000 gallons of water passed a given point near the village each

---

[1] Rehearing denied March 3, 1909.

hour.  Plaintiff's farm is located just south of the corporate limits of the village.  Deer creek flows along its southerly edge.  He has the usual farm buildings for housing his stock.  A quarter of a mile above plaintiff's house is located a slaughterhouse, draining into the creek. This creek flows through the village, entering it at the northerly side and flowing out at the southerly side.  The village established a system of waterworks in 1903.  It had sewers draining into the creek prior to and since the organization of the waterworks.  Fulton street sewer was constructed in 1899.  It is the southerly sewer of the village, and is of the same size as other sewers.  It is about three-quarters of a mile in length and provided with catch basins for draining the surface water from the street. Before reaching plaintiff's premises, it empties into an open ditch, about 10 rods in length, which empties into the creek.  This ditch runs along the westerly side of the highway and a short distance from the plaintiff's house on the east side of the highway.  The kitchen sink of the village hotel and that of the village butcher shop were connected with this sewer.  After the construction of the waterworks three house closets were connected with it in 1903, one in 1904, and two in 1905.  Plaintiff gave evidence tending to show that this creek in very dry seasons becomes nearly or quite dry, except in the deep pools. Plaintiff claims an injury to his property from the deposit of the sewage in the ditch and into the creek from the ditch.  For this injury he brought suit, and recovered a verdict and judgment.

GRANT, C. J. (*after stating the facts*).  The record in this case is of unnecessary length.  It contains all the testimony given upon the trial.  There was a sharp conflict of evidence as to noxious and offensive vapors and smells arising from the open ditch from the mouth of the sewer to the creek; the clear preponderance of evidence being in favor of the plaintiff upon this point.  The condition of this open ditch is the gravamen of the plaintiff's

case. Counsel for defendant state in their brief the substance of the testimony of the witnesses who testified that in passing along the road they discovered no noxious smells. They do not quote the testimony to the contrary. This is not a suit in chancery in which this court determines the facts. A page or two of the record would have been sufficient in stating what each side gave evidence tending to show upon this point. That filth was deposited along and in this open and level ditch is clearly shown by the witnesses for the plaintiff. Its deleterious effect is also clearly shown by the evidence on behalf of the plaintiff. Counsel for the plaintiff in their brief say :

"He (plaintiff) did complain of the pollution of Deer creek, and did insist that said creek was no suitable or proper outlet for the sewer; but the creation of a cesspool practically in his front yard was the cause of the most of the damage he asked compensation for."

Plaintiff made no complaint and claims no damages resulting from the flowage of the other sewers of the village into the creek. He gave no evidence tending to show to what extent the water of the creek above the Fulton street sewer was polluted by the sewage into it, either by the village or the inhabitants above the village. For such damage clearly the defendant was not liable, and the court so instructed the jury. Under all the authorities, which we need not cite, the defendant possessed no right to dump its sewage into an open ditch by the plaintiff's residence, which gave forth obnoxious and offensive odors. If the case had been submitted to the jury upon this, the chief cause of action, the judgment might be sustained. If this sewer had been constructed across this low ground with pipe and covered up, probably this suit would not have been brought.

It is very doubtful whether the sewage into the creek by the defendant is not, under the decisions, a reasonable use of the stream. The question is one of great importance to cities and villages located upon the rivers, creeks, and lakes of this State. The use of a stream reasonable

at one time and one place may become unreasonable at another time and at another place. The reasonable use of a stream must be determined in the light of increased population, of proper sanitary measures, and the general welfare of the communities affected. The sewerage of villages and cities has become an absolute necessity for the public health. It is not enough to condemn a use as unreasonable because such a use may pollute to some extent the waters of the stream below. Its use by the upper riparian owners may be such as to render it unfit for domestic purposes by man, and yet such use may be reasonable. This subject is very fully discussed and many authorities cited and quoted from in *People* v. *Hulbert*, 131 Mich. 156 (64 L. R. A. 265). It is not essential to again cite them. After reviewing the authorities in that case, through Justice MOORE, we said:

"It is very clear from these cases that the lower proprietor has no superior right to the upper one, and may not say to him that, because the lower proprietor wants to use the water for drinking purposes only, the upper proprietor may not use the water for any other purpose. Each proprietor has an equal right to the use of the stream for the ordinary purposes of the house and farm, even though such use may in some degree lessen the volume of the stream, or affect the purity of the water. (Citing authorities.) This right is not affected by the fact that the lower proprietor is a municipality instead of an individual. (Citing authorities.)"

We also said, after speaking of the use which the inhabitants make of the streams and lakes:

"It is also known that, as a rule, the supply of drinking and cooking water is obtained from springs or wells."

We are not prepared to say that the pollution of a stream by sewage from a municipality into a stream which renders the water below unfit for the use of man is unreasonable and may be enjoined. Neither are we prepared to say that, if such pollution rendered its use unfit for domestic animals, it is unreasonable and may be restrained. Probably no man would be permitted in these days to sell

milk from cows who drink polluted water. Pollution which will carry disease to man will likely also carry disease to dumb animals. We refrain from further discussing this important question. The question is barely referred to in the brief of counsel for the plaintiff, and its decision is not essential to a determination of this case. It is sufficient to say that the plaintiff failed to give any evidence from which the jury could determine how much damage was done to him by the pollution of the water in the creek above the Fulton street sewer, and how much by the sewer itself. For this reason, upon this branch of the case, the court should have eliminated the pollution of the creek from the consideration of the jury, and limited plaintiff's recovery to the damage done by the open ditch.

Judgment reversed, and new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and BROOKE, JJ., concurred.