MONROE CARP POND CO. *v.* RIVER RAISIN PAPER CO.

1. WATERS AND WATERCOURSES—RIPARIAN RIGHTS—POLLUTION OF STREAM ESTABLISHED BY EVIDENCE.

   In a suit by a lower riparian owner, operating a carp pond for profit, to enjoin the pollution of a stream by the discharge into it of waste matter from defendants' mills, and for damages for loss caused thereby, evidence *held,* sufficient to establish that the water, after it passes defendants' mills, is so depleted of oxygen, due to its pollution, that fish are not likely to live therein.

[1]Waters, 40 Cyc. p. 601 (Anno).

2. SAME—LOSS ESTABLISHED BY EVIDENCE.

Although the water is somewhat polluted when it reaches defendants' mills, that part of the loss of oxygen, at least, is caused by waste therefrom, and that many fish in plaintiff's pond have died from lack of sufficient oxygen, *held*, established by the record.

3. SAME—RIGHT TO USE OF STREAM NOT ABSOLUTE BUT IS QUALIFIED BY RIGHTS OF OTHERS—UPPER RIPARIAN OWNER HAS PRIOR RIGHT.

The right to the use of water in a stream by a riparian owner is not absolute, but is a natural right qualified and limited by a like right on the part of others, and is an incident to the ownership of the land through which the stream passes; the upper riparian owners having a prior right to those below.

4. SAME—IF USE BY UPPER OWNER IS REASONABLE LOWER OWNER MAY NOT COMPLAIN ALTHOUGH WATER SOMEWHAT POLLUTED.

The waters of a stream may, by the use of an upper riparian owner, be rendered unfit for many purposes for which pure water is suitable, and yet the lower riparian owners have no just cause for complaint, if such condition results from a reasonable use thereof in accordance with the common right.

5. SAME—WHETHER USE IS REASONABLE DEPENDS UPON FACTS IN PARTICULAR CASE.

Whether the use which is made of the waters of a stream by a riparian owner is reasonable depends upon the facts in the particular case; no general rule being applicable to all cases.

6. SAME—POLLUTION OF WATER BY DISCHARGING WASTE SO THAT FISH DIE IS NOT REASONABLE USE.

Where the water of a stream, although somewhat polluted when it reaches defendants' mills, has sufficient oxygen to sustain fish life, but after leaving them and at the time it reaches plaintiff's carp pond, the oxygen is so depleted that many of the fish die, the use made of the water by defendants is not a reasonable one, and plaintiff has a right to complain thereof.

7. SAME—RIPARIAN LAND MUST BE IN CONTACT WITH WATER.

Riparian land must be in actual contact with the water.

²Waters, 40 Cyc. p. 601 (Anno); ³Id., 40 Cyc. pp. 561, 562; 27 R. C. L. 1074; ⁴Id., 40 Cyc. p. 594; 41 L. R. A. 751; 6 L. R. A. (N. S.) 1111; 11 L. R. A. (N. S.) 1166; 27 R. C. L. 1230; 5 R. C. L. Supp. 1501; 6 R. C. L. Supp. 1696; ⁵Id., 40 Cyc. p. 563; ⁶Id., 40 Cyc. p. 595 (Anno) 597; ⁷Id., 40 Cyc. pp. 558, 559.

8. APPEAL AND ERROR—PLAINTIFF'S RIGHTS AS RIPARIAN OWNER.
   Where no issue was made in the trial court as to whether plaintiff is entitled to the rights of a riparian owner, and what little proof was submitted showed that its carp pond is connected directly with the stream, and that it is in possession at least with the consent of the owner, the decree awarding plaintiff money damages will not be reversed for said reason, raised in this court, since, had the question been raised in the trial court, additional proof might have been submitted.

9. INJUNCTION — IRREPARABLE MISCHIEF — GRANTING INJUNCTION DISCRETIONARY.
   Injunctions are to prevent irreparable mischief and stay consequences that could not be adequately compensated; their allowance is discretionary and not of right, calls for good faith in the petitioner, and may be withheld if likely to inflict greater injury than the grievance complained of.

10. SAME—DISCRETIONARY POWER SHOULD NOT BE EXERCISED ARBITRARILY.
    The discretion exercised in the allowance or refusal of an injunction should not be arbitrary, but should be based upon a full consideration of the right violated, the effect of granting it upon the defendants and other interests affected thereby, and the effect of denying it upon the plaintiff.

11. SAME — RIPARIAN RIGHTS—POLLUTION OF STREAM NOT ENJOINED WHERE INEQUITABLE AND LOSS MAY BE RECOMPENSED WITHOUT IT.
    Where it appears that the prosperity of a city of 13,000 inhabitants depends largely upon defendants' eight mills, seven of which were built before plaintiff established its carp pond, 3,000 persons are employed therein, defendants could not operate them profitably without discharging its waste into the stream, and defendants have $15,000,000 invested, while plaintiff has only $10,000 invested, employs only from one to five men, and it may be recompensed for its loss without granting a permanent injunction restraining defendants from so discharging its waste, it would be inequitable, under the circumstances, to grant it, since

[8]Appeal and Error, 3 C. J. § 769; [9]Injunctions, 32 C. J. §§ 11, 30, 31, 64; [10]Id., 31 C. J. §§ 11, 64; [11]Id., 32 C. J. §§ 64, 66.

the granting of it would work a great injury, entirely disproportionate to that sustained by plaintiff.

12. APPEAL AND ERROR—DAMAGES—CASE NOT REOPENED WHERE OBJECTION NOT MADE IN COURT BELOW.

Where plaintiff claims that proof of damages for the years 1919 to 1922 was submitted for the purpose of showing that it was entitled to injunctive relief and not to obtain decree therefor, but the court below apparently did not so understand it and fixed damages for plaintiff's loss up to the time of the decree, and it does not appear that objection thereto was made at the time the decree was signed, the Supreme Court will not reopen the litigation for this reason, although some injustice may have been done to plaintiff in awarding damages for the years in question.

13. WATERS AND WATERCOURSES — DAMAGES — APPORTIONMENT OF LOSS.

Where it appeared that the condition of plaintiff's carp pond was due only in part to the pollution caused by defendants' mills, and the damages were therefore apportioned by the court below, but no unfairness in the allowance made appears, plaintiff's claim that said apportionment was not justified by any testimony in the case is without merit, since the estimate of loss was not based on the condition of the pond alone; there being testimony as to the average loss and shrinkage of carp in such ponds under normal conditions.

Cross-appeals from Monroe; Hart (Burton L.), J. Submitted January 6, 1927.     (Docket No. 34.)     Decided October 3, 1927.

Bill by the Monroe Carp Pond Company against the River Raisin Paper Company and others to enjoin the pollution of a stream, and to obtain damages due thereto.     From the decree rendered, all parties appeal. Affirmed.

*Stevenson, Butzel, Eaman & Long* (*H. E. Spalding* and *Charles A. Wagner*, of counsel), for plaintiff.

*Angell, Turner & Dyer*, for defendants.

[12]Appeal and Error, 3 C. J. § 769; [13]Waters, 40 Cyc. p. 602 (Anno).

SHARPE, C. J. The defendants manufacture card board and box board at the city of Monroe. The wastes from the plants are discharged into the Raisin river. The plaintiff was organized in 1916, and since that time has operated a pond near the river below defendants' mills for the storage and feeding of carp, obtaining the water for the pond from the river, and also using the river to transport the fish from the pond to Monroe, from whence they are shipped alive in cars to eastern markets. Many of its fish have died.

This suit is brought to enjoin the pollution of the river water by defendants' wastes, and to obtain damages for the loss of carp due thereto. It is plaintiff's claim that the wastes affect the oxygen content of the water, and that the death of its fish in the pond and while in transport is mainly attributable thereto. It appears that the sewage of the city of Monroe is also discharged into the river and has a similar effect upon the water.

The trial court found:

"After considering the testimony, the court finds that the use of the river and its waters by the defendants does not constitute a nuisance, is not injurious to public health, and is not poisonous to fish. The court does find, however, that this large amount of water used and waste returned into the river depletes the river of a large amount of oxygen, both near the mills and in the canal, and in this way it becomes an unreasonable use as far as the lower riparian owner, the plaintiff, is concerned."

After reviewing the authorities at length, he concluded that injunctive relief should not be granted. He stated in his opinion:

"It was conceded on the argument that, if defendants were liable, the city of Monroe would be responsible for its proportionate part of the contribution to the injury and each defendant for its proportionate part.

"I find that, as compared with each other, the relative responsibility of the city of Monroe to the paper mills for the depletion of oxygen is 32 per cent. for the city and 68 per cent. for the defendants."

He determined the amount of plaintiff's loss due to the lack of sufficient oxygen in the stream, and granted it a decree for 68 per cent. thereof. He also estimated the amount which plaintiff should be allowed for loss thereafter to occur, and apportioned it in a similar manner. The total amount decreed to be paid by the defendants was $23,141.40. Both parties appeal.

It is plaintiff's claim that, its damages being substantial and the injury a continuing one, the fact that defendants' loss would be much greater if enjoined from further pollution of the stream is not sufficient ground for refusing an injunction. It also claims a greater amount of damage than was allowed. It is defendants' claim that the water in the stream is not rendered unfit for plaintiff's use by the waste from defendants' mills, that its use of the water is not an unreasonable use, and that the comparative injury and loss to the parties make it inequitable to grant injunctive relief. They also claim that plaintiff is not entitled to the rights of a riparian proprietor. They concede that the amount decreed for past and prospective damages is just and equitable.

1. Defendants' Use of the Stream. Defendants' counsel insist (*a*) that the proofs do not disclose that the water is rendered unfit for plaintiff's use by the waste deposited therein by defendants, and (*b*) that the defendants' use of the stream is such a reasonable use as an upper riparian proprietor is entitled to make.

(*a*) Water under normal conditions has a definite amount of dissolved oxygen in it, dependent somewhat upon the temperature and pressure. Pollution in the process of decay, when put into the water, takes up oxygen from it in order to complete the reaction in-

cident to its purification.   The proof is convincing that
the waste from the paper mills and the sewage from
the city has this effect.   While the evidence shows
that the water in the stream is somewhat polluted when
it reaches Monroe, we have no doubt under the proofs
that the water after it passes defendants' mills is so de-
pleted of oxygen that fish are not likely to live therein.
That such loss of oxygen is due, in part at least, to
the waste from defendants' mills cannot be doubted.
That many fish have died in plaintiff's pond, owing to
the lack of sufficient oxygen to sustain life, clearly
appears.

(b) The right to the use of the water in a stream
by a riparian proprietor is not absolute.   It is a
natural right, qualified and limited by the existence of
a like right on the part of others.   It is an incident
to the ownership of the land through which the stream
passes.   The enjoyment of such use by a landowner
is prior to those below him, and subsequent to those
above him, on the stream.   The water may by his
use be rendered unfit for many purposes for which
pure water is suitable, and yet the lower riparian
proprietor may have no just cause for complaint, if
its condition results from a reasonable use thereof in
accordance with the common right.   We must, there-
fore, determine whether the use made by defendants
of the water in the stream is a reasonable one.   Its
effect has already been considered.

The river Raisin has on its banks above Monroe a
number of towns and cities in which there is some
manufacturing.   The sewage and waste put into the
river at such places cause a depletion of the oxygen
content in the water.   The current is, however, quite
rapid until the stream reaches Monroe and passes de-
fendants' mills.   Below the lowest of these mills, the
water becomes slack and deep, and this condition con-
tinues until it reaches the lake.   In *People* v. *Hulbert,*

131 Mich. 156 (64 L. R. A. 265, 100 Am. St. .Rep. 588), the following from *Gehlen Bros.* v. *Knorr,* 101 Iowa, 700 (70 N. W. 757, 36 L. R. A. 697, 63 Am. St. Rep. 416) :

"No statement can be made as to what is such reasonable use which will, without variation or qualification, apply to the facts of every case,"

was quoted with approval.    And in *Phillips* v. *Village of Armada,* 155 Mich. 260:

"It is not enough to condemn a use as unreasonable because such a use may pollute to some extent the waters of the stream below."

That which plaintiff here complains of is not the use which defendants make of the water for manufacturing purposes.    The gravamen of the charge here made is that defendants use the stream for a dumping ground in which the waste products of the mills are deposited, and that the amount of such deposit is so great that the water cannot and does not become purified when it reaches the place on the river where plaintiff's pond is located.

In *Parker* v. *American Woolen Co.,* 195 Mass. 591 (81 N. E. 468, 10 L. R. A. [N. S.] 584), it was said:

"We regard it however as settled that no riparian proprietor has the right to use the waters of a natural stream for such purposes or in such a manner as will materially corrupt it to the substantial injury of a lower proprietor, or to cast or discharge into it noxious and deleterious substances which will tend to defile the water and make it unfit for use."

In a later case in that court, *MacNamara* v. *Taft,* 196 Mass. 597 (83 N. E. 310, 13 L. R. A. [N. S.] 1044), in commenting on the *Parker Case,* the court said:

"But the rules and principles so fully stated in *Parker* v. *American Woolen Co., ubi supra,* forbid the unnecessary discharge of polluting substances into a

stream in quantities that appreciably affect the purity of the waters when they reach the premises of a riparian proprietor below, and render them materially less fit for domestic or other uses to which they might be put there than when they came to the land of the owner who is charged with polluting them."

It is urged that these cases are not applicable because the water in the stream at the time of the discharge of the noxious matter into it was not then polluted, as is here the case.   While there is dispute about it, we are of the opinion that the water when it reaches Monroe has a sufficient supply of oxygen in it to sustain fish life, and, were it not for the discharge of defendants' waste and the sewage of the city into it, plaintiff would have no cause for complaint.

Many other authorities are cited and quoted from in the briefs of counsel.   We find little conflict of authority in the rule to be applied for determining reasonable use; the difficulty is in applying the facts of the particular case to the rule.   In our opinion, it must be said that the use made of the stream by the defendants as above stated is not a reasonable one, when complained of by a lower proprietor having riparian rights thereto.

2. Plaintiff's Riparian Rights.   The bill of complaint alleged that plaintiff "is the lawful occupant and tenant" of the premises occupied by it for its carp pond.   No issue as to this was made in the answers filed; neither was this defense raised in the trial court. At its upper end, plaintiff's pond is connected directly with the river.   It is true that riparian land must be in actual contact with the water.   27 R. C. L. p. 1074; 40 Cyc. p. 558.   What little proof was submitted on this question shows that plaintiff is in possession at least with the consent of the owner. Had this question been raised on the trial, additional proof would probably have been submitted.   We are unwilling to reverse the decree for this reason.

3. Injunctive Relief.    Plaintiff's contention is thus stated by its counsel:

"The damage to the plaintiff being substantial and the injury being a continuing one, the fact that the loss to the defendants from stopping their pollution of the stream would be much greater than the monetary damage to the plaintiff from its continuance is no ground for refusing an injunction."

In *Edwards* v. *Allouez Mining Co.*, 38 Mich. 46 (31 Am. Rep. 301), it was held (syllabus) :

"Injunctions are to prevent irreparable mischief and stay consequences that could not be adequately compensated; their allowance is discretionary and not of right, calls for good faith in the petitioner, and may be withheld if likely to inflict greater injury than the grievance complained of."

In *Hall* v. *Rood*, 40 Mich. 46, 49 (29 Am. Rep. 528), in denying a claim for injunctive relief, this court said:

"If it is apparent that the relief sought is disproportioned to the nature and extent of the injury sustained, or likely to be, the court will not interfere but will leave the parties to seek some other remedy."

The rule thus laid down has been many times applied by this court, the last being in *Murphy* v. *Water Power Co.*, 204 Mich. 511.

Monroe is a city of about 13,000 population. Its principal industries are the mills of the defendants. There are eight of these, in which about 3,000 persons are employed. Defendants' investment in these plants is about $15,000,000. The proof satisfies us that there is no way in which their waste can be treated and purified on their own premises so as to permit the plants to be operated with reasonable profit. Seven of defendants' mills were erected before plaintiff established its carp pond in 1916. The eighth was built in 1918.

The plaintiff company has a capital stock of $10,000.

It employs from one to five men.   While the record does not contain a list of its stockholders, it appears that Mr. Sterling has had control of it.   He had long been a resident of Monroe, and had full knowledge of defendants' industries and the extent to which the city was dependent upon them for its prosperity.

While plaintiff's business, if operated without the loss incident to the pollution of the stream by the defendants and the city, would doubtless prove a profitable one, we cannot but agree with the trial court "that the equities in this case would be against granting a permanent injunction."   It is apparent that the plaintiff may be recompensed for such loss as it will sustain by a denial of such relief.   It is also apparent that the granting of it will work a great injury, entirely disproportionate to that sustained by plaintiff, upon the defendants, and that it will also seriously affect the prosperity of the city.   It will serve no useful purpose to refer to or discuss the cases cited by plaintiff's counsel in which such relief was granted. Each must depend upon its own facts.   The discretion exercised in its allowance or refusal should not be arbitrary.   It should be based upon a full consideration of the right violated, the effect of granting it upon the defendants and other interests affected thereby, and the effect of denying it upon the plaintiff.   After due consideration, we are persuaded that the action of the trial court in denying the injunction was warranted.

4. Plaintiff's Damages.   The original bill of complaint was filed on April 9, 1920.   In it claim was made for damages up to that date.   While a supplemental bill was filed in 1922, it is plaintiff's claim that damages for the years following 1919 were not therein claimed for.   Its counsel urge that such proof of damages in the later years as was introduced was submitted for the purpose of showing that plaintiff was

240—Mich.—19.

entitled to injunctive relief, and not to obtain decree therefor. The trial court apparently did not so understand. In his opinion he fixed the damages for plaintiff's loss up to the time of the decree. It does not appear that any objection was made to this action on his part at the time the decree was signed. While some injustice may have been done to plaintiff in the award of damages for the years following 1919, we are not disposed to reopen the litigation for that reason.

It is also claimed that the apportionment of loss due to conditions in the pond was not justified by any testimony in the case. This estimate of loss was not based on the condition of the pond alone. W. H. Cleaver, the manager of two carp ponds at places along the lake, testified:

"The average loss and shrinkage of carp that we put in the pond from one year to the other is about 27 per cent. from the time we weigh in the fish till we ship them."

We find no unfairness in the allowance made by the court for such losses.

There is no criticism on the part of either counsel of the amount awarded to plaintiff as damages in gross for future losses. These were computed upon the probable expense of constructing a new pond or making such changes in the source of its water supply as would avoid loss.

Some other questions are discussed. In our opinion they do not merit extended consideration. We are impressed that the conclusions reached by the trial court were supported by the proof, and that they are just and equitable.

The decree is affirmed. As both parties appeal, no costs in this court will be allowed.

SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred. BIRD, J., did not sit.