MURPHY *v.* BIG RAPIDS WATER POWER CO.

1. WATERS AND WATERCOURSES — FLOWAGE RIGHTS — RIPARIAN
RIGHTS—GRANT—RESERVATION.

In a proceeding by the owner of lands along a river bank
to compel defendant to lower its dam, a record showing
that the flowage rights vesting in defendant's and plain-
tiff's common grantor were reserved, *held*, sufficient to
sustain the finding of the court below that defendant had
not obtained such flowage rights by grant.

2. SAME—PRESCRIPTION—EVIDENCE—SUFFICIENCY.

Conflicting testimony as to height of water carried in de-
fendant's dam in the past, *held*, insufficient to establish
its right of increased flowage of plaintiff's land by pre-
scription.

3. SAME—FLOODING LANDS—DAMAGES—DECREE.

Decree of court below, providing as an alternative to lower-
ing the dam the furnishing of an electric pump and elec-
tricity to operate same perpetually to compensate plain-
tiff for destruction of spring water and hydraulic ram by
flooding, modified by substituting a money consideration
of $1,500 as an alternative.

Appeal from Mecosta; Miner, J., presiding. Sub-
mitted April 12, 1918. (Docket No. 75.) Decided
February 7, 1919.

Bill by Michael J. Murphy against the Big Rapids
Water Power Company to compel defendant to lower
the height of a dam. From a decree for plaintiff, de-
fendant appeals. Modified, and affirmed.

*Nichols & Nichols,* for plaintiff.

*Broomfield & Worcester,* for defendant.

BIRD, C. J. Plaintiff filed his bill in the Mecosta
circuit court, in chancery, praying for a mandatory

See notes in 59 L. R. A. 817, 874; 28 L. R. A. (N. S.) 156.

injunction to compel defendant to lower the height of its dam across the Muskegon river at Big Rapids. The trial court granted plaintiff relief and defendant appeals.

Defendant is a corporation by virtue of Act No. 232 of the Laws of 1863, and amendments thereto (2 Comp. Laws 1897, §§ 6767-6822 [2 Comp. Laws 1915, §§ 8867-8919]). It was incorporated in 1881 and its corporate powers were renewed in 1911. Its members, or stockholders, are seven in number: One municipal corporation, one copartnership and five industrial corporations, all of which utilize the water power.

Plaintiff owns lots 1 and 2 of Chew's addition to the city of Big Rapids; also lots 5 to 13 inclusive in River block, Brown's addition to the city of Big Rapids. These lots lie immediately west of the river and are situate about 80 rods above the dam. The banks of the river at this point are somewhat bluffy. Soon after the plaintiff purchased these premises in 1901 he discovered three springs at the rear of one of the lots in a small indentation or bay, located two or three feet above high water mark. In 1912 he installed an hydraulic ram, which elevated the spring water into his house, barn and lawn tank, thereby furnishing him an excellent water system. A flood in 1913 carried away the old dam which had been in existence since 1866, and a new one was erected in 1914. The new one was erected so that the water could be carried much higher than with the old one. Soon after the new dam was erected the water commenced to gradually rise and continued until plaintiff's springs were submerged and the hydraulic ram choked, in consequence of which his water system was destroyed. His position is that the water has been raised by the new dam and is carried from two to three feet higher than it was with the old dam. The defendant denies this and asserts that:

(1) The water is carried no higher with the new dam than with the old.

(2) That if it be higher it has the right by grant to so carry it.

(3) That it has a prescriptive right to carry it to the present level.

Considerable testimony was offered by the parties bearing upon the height of the water under the old and new dams, and at the conclusion of the hearing the chancellor found the water was carried higher with the new dam than with the old, and that defendant had no right to do this, either by grant or by prescription, and an alternative decree was made providing that defendant should install an electric pump for plaintiff and furnish him and his heirs and assigns electricity to operate it, or lower the height of the dam 15 inches. From this decree defendant appeals and discusses the same questions which were raised and discussed in the trial court.

1. We agree with the chancellor that defendant has not established the right of flowage by grant. Formerly the flowage rights appurtenant to plaintiff's lands, as well as to the factory sites now owned by the constituent members of defendant, rested in the Tioga Manufacturing Company. When the Tioga Manufacturing Company conveyed the fee of these lands it reserved the flowage rights. The Tioga Manufacturing Company was a corporation and was at that time engaged in the manufacturing business on the river. Its assets subsequently passed into the hands of J. Platt Underwood, as trustee. They included these flowage rights, and so far as the record shows, they still reside there. This being so, it follows that neither defendant nor plaintiff is possessed of the flowage rights appurtenant to plaintiff's lands. It is, therefore, clear that defendant cannot exercise this right on the theory of a grant.

204—Mich.—33.

In holding that defendant is not protected by grant we have not overlooked the argument of defendant's counsel, in which it is urged that the practical construction given to prior grants by plaintiff's and defendant's predecessors in title would fix the height at which the water might be carried. This argument might have some persuasive force were it not for the fact that it rests upon a question of fact, namely, whether the water was really carried as high at that time as at the present time. This question of fact is the same question of fact that is involved in the other claim of defendant, namely, that it has a prescriptive right to flow the lands up to the present height.

2. We are not impressed that defendant has established its right of increased flowage of plaintiff's land by prescription. The testimony was, of course, in conflict. Several witnesses testified that the water was being carried no higher than it had been in the past with the old dam. Plaintiff's proofs show that the water is carried much higher with the present dam and that the increased capacity of the new dam has been utilized in part. Witnesses who have been familiar with the springs for many years, some of whom helped to install plaintiff's water works, testified that the water was carried at a level much below the springs. It is also shown that the water from these springs was utilized by some of plaintiff's predecessors in title, and that plaintiff has used the water from these springs for domestic purposes since his purchase in 1901, and that now they are submerged.

3. Much attention has been given by counsel in their briefs to the character of the relief granted plaintiff by the trial court. Defendant's counsel contend that if this court disagrees with their contention upon the merits that it is a case where injunctive relief ought not to be granted but damages instead should be fixed because the injury which would result to defendant

if it were obliged to lower the dam would greatly outweigh the grievance of the plaintiff. *Fox* v. *Holcomb,* 32 Mich. 494; *Hall* v. *Rood,* 40 Mich. 46 (29 Am. Rep. 528); *City of Big Rapids* v. *Comstock,* 65 Mich. 78.

During the progress of the hearing plaintiff offered in open court to discontinue the case if defendant would pay the costs, on condition that it would install an electric pump and furnish plaintiff, his heirs and assigns, electricity to operate it. In view of this offer and the very large industrial interests which rely on this water power, we think the chancellor was right in recognizing and applying this principle to the extent at least of permitting defendant to compensate plaintiff without injury to its water power. We are not impressed, however, that one of the alternatives laid down by him is the best that can be prescribed. To install a pump, keep it in operation and furnish electricity to operate it, practically in perpetuity, is not as desirable as a money consideration. Such an arrangement would require much bookkeeping and accounting on the part of the defendant and would give rise to endless controversy, and if, at the end of defendant's corporate existence, its charter should not be renewed, another difficulty would arise. There is not much testimony in the record bearing on the question of damages. The only direct proof of the damages comes from the testimony of the plaintiff, who stated that they were $1,500. To supply an equally efficient service plaintiff would be obliged to connect with the city system, the nearest hydrant of which is 700 feet away. Or a windmill or an electric pump could be installed. Either one of the latter methods would give plaintiff the benefit of the spring water for domestic purposes. The other method, of course, would not. Any one of these methods involves installation and maintenance charges. To be deprived of a system of water works as inexpensive as the present

one, and one furnishing as wholesome water as it does for domestic purposes, is to be deprived of a valuable right, and where the courts apply this equitable rule full compensation should be awarded. We are disposed to alter the decree by substituting a provision for the payment of $1,500, for the alternative that defendant should install an electric pump and furnish electricity to operate the same. Defendant will be required to make and file an election within 30 days after this opinion is filed. In the event that no election is filed and no payment is made within that time, the dam will be reduced in height in accordance with the decree of the trial court.

Subject to this change the decree may be affirmed without costs to either party in this court.

OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.